[Civ. No. 16875.   Second Dist., Div. One.   Dec. 5, 1949.]

Estate of MARION McPHERSON, Deceased.   LENA E. MISSAMORE, Appellant, v. ELIZABETH McPHERSON, Respondent.

West, Vizzard, Howden & Baker for Appellant.

H. H. Bell, Canfield & Westwick and Stanley T. Tomlinson for Respondent.

DRAPEAU, J.—Elizabeth McPherson in her younger days lived in the Cuyama Valley, not far from where Kern, San Luis Obispo, and Santa Barbara Counties come together. She and her husband were homesteaders. They raised a family of four girls and one boy. Two or three of the girls were born there. The land wasn't much good; it was dry farming; it didn't rain much, and times were always hard.

After her husband died, Mrs. McPherson lost the old homestead. She had to borrow a few hundred dollars on it; could not repay the loans or pay interest, and the mortgages were foreclosed. Certain unscrupulous, speculative money lenders used this method to acquire land in that section.

In 1916, Mrs. McPherson's only son passed away. He too had a homestead in the Cuyama; 320 acres of dry land, about 90 acres fit to farm. The mother was his sole heir, and she lived on the son's homestead until 1938.

While Mrs. McPherson was living on this property she pledged it also for about $150, in two small loans. She could not repay these loans, and was thus left to the tender mercies of the unscrupulous lender, who was about to foreclose. And as a final evidence of rude and frowning Fortune, the cabin in which she lived burned to the ground, with all her meager possessions.

It was then that her daughter, Lena E. Missamore, and Lena's husband came to the rescue. Lena and her husband paid the loans out of their own money; they also built and furnished a new cabin for the mother to live in. And in extra dry years they hauled drinking water to the ranch.

In 1938, the mother went to live with Lena at Taft, California. With the exception of the first 18 months she was there, her board and room, however, were paid for out of an old-age pension. She visited her other girls, and was on good terms with all of them.

In 1940, probate proceedings were commenced in Santa Barbara County to clear title to the deceased son's homestead. Mrs. McPherson nominated her daughter Lena as administratrix of the estate; the daughter qualified and was appointed. The probate proceedings lagged along for many years. Notice to creditors was given in 1942.

In 1943, Mrs. McPherson went to the office of Lena's lawyer in Taft, in company with Lena and Lena's husband, and executed a waiver and assignment in favor of Lena of all of her right, title, and interest in the son's estate. After a couple of years the assignment was filed in the probate matter.

In 1948, oil was discovered in the Cuyama. Everybody began to check up on titles to lands which theretofore had been thought to have little value; and to show an interest in persons owners thereof. The daughters of this old lady evidently became concerned about her property rights.

In 1948, first and final account in the probate matter was filed; with petition for distribution to Lena, in accordance with the waiver. Counsel for the mother appeared, seeking to have the waiver set aside, pursuant to the provisions of Probate Code, section 1020.1. This section requires the probate court to inquire into the consideration for assignments like the one here involved, and into the circumstances surrounding the execution thereof. If the court finds the consideration grossly unreasonable, or that the assignment was procured by duress, fraud, or undue influence, it may refuse to make distribution under the assignment, except upon such terms as it deems just and equitable.

Issues were framed on affidavits, and testimony was taken. At the trial the mother was 82 years of age. She testified that she could neither read nor write; that she had no recollection of signing the waiver; that she did not intend it; and that she wanted her property to go to her four girls, share and share alike.

The trial court found that the waiver was executed by Mrs. McPherson without understanding its nature and import, or intending to disinherit herself; that there was no consideration therefor; and that it was procured by undue influence of the daughter Lena. Order was made setting the waiver aside,

and distributing the son's estate to the mother. From this order the daughter Lena has appealed.

■ Counsel for appellant devote many pages of their briefs to argument as to the weight, value, and effect of the testimony. The power of this court begins and ends with the determination from an examination of the record that there is substantial evidence to support the order. The testimony of Mrs. McPherson as stated is sufficient, under our law of appeals in California, to sustain the order vacating the waiver and distributing the estate to her.

■ And the circumstances surrounding the making of the assignment are sufficient to sustain the finding of undue influence. While it is true that Lena was kind to the old mother, and there is no evidence that the other girls did much if anything for her, there was a relationship of highest trust and confidence between the mother and this daughter. And it is to be remembered that this is not a contest among the four daughters. All that is involved is the judicial determination that the mother shall possess and enjoy, and finally dispose of by her will, property which the law gives to her as the sole heir of her son.

■ Were the order based only upon the finding of insufficient consideration some other disposition of the case would be required; for, in the circumstances here shown, there is no support for a finding that the consideration was grossly unreasonable. On the contrary, there is ample evidence of that love and affection between this mother and daughter which would be good consideration for a conveyance of property from one to the other.

■ Application of the Probate Code section involved must be left in great measure to the sound discretion of the probate judge. And appeals from orders made pursuant to the section are governed by the general rules on appeal in this state.

As was said in *Estate of Isenberg,* 63 Cal.App.2d 214, at page 216 [146 P.2d 424] : ''It is the general rule that on appeal an appellate court will (a) view the evidence in the light most favorable to the respondent, (b) not weigh the evidence, (c) indulge all intendments which favor sustaining the finding of the trier of fact, and (d) not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof . . .

" . . . the power of an appellate court *begins* and *ends* with a determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact."

The rule is stated, and a host of decisions supporting it cited, in 2 California Jurisprudence at pages 921 et seq. It is the settled policy of the law of California that it is the province of the trier of fact to decide, and when his decision is based upon substantial evidence in the record, it will not be disturbed on appeal.

The order is affirmed.

White, P. J., and Doran, J., concurred.