[Civ. No. 26894.   Second Dist., Div. Two.   June 25, 1963.]

Estate of ALICE P. SIMMONS, Deceased. CALVIN OTIS TOWNSEND, Petitioner and Appellant, v. CAROLINE SKIDMORE BINGMAN, as Administratrix With the Will Annexed, Objector and Respondent.

Freda B. Walbrecht and Bernard G. Hiss for Petitioner and Appellant.

Hitchcock & Coulter and L. G. Hitchcock for Objector and Respondent.

FOX, P. J.—Calvin Otis Townsend, claiming to be an assignee of heirs of Alice P. Simmons, deceased, brought a petition for distribution of a portion of the estate of decedent, *vis.*, a one-half undivided interest in a parcel of real property in the City of Downey, California.* Petitioner alleged that the parcel was not included in the inventory and appraisement filed in the original probate proceedings, in which an order settling final account and for final distribution was made. He also alleged that the property was not included in any devises or bequests of the last will and testament of decedent and therefore passed on her death to her heirs at law.

Petitioner further alleged that the sole heirs at law of the decedent assigned and conveyed, for a valuable consideration, all of their right, title and interest in and to the property, by a quitclaim deed to petitioner and his then wife. He attached a copy of the alleged quitclaim deed to the petition. His final allegation with respect to his claim of interest in the property was that his wife conveyed to him by a quitclaim deed her interest in said property. He also attached that alleged quitclaim deed to the petition.

Petitioner claims that, without notice to him, Caroline Bingman, a grandniece of one of decedent's heirs, filed a petition to reopen the estate, that letters of administration were issued to her by the court, and that the property was inventoried and appraised at $500.

The petition prays that the court make an order requiring the administratrix to deliver the property to the petitioner.

The administratrix filed an opposition to the petition, stating that the estate had been reopened for the very reason that

---

*While petitioner argues that the trial court erroneously considered that 100 per cent interest in the property was in issue in the instant case, thereby making ''. . . respondent a gift of 50% interest in addition to the 50% interest which was claimed . . . ,'' it is nevertheless clear from the findings of fact made by the trial court, that no such error was made. Although the findings use the term ''real property'' throughout, this is defined in finding number 3 as follows: ''The said real property is a part of the above entitled estate and is described as follows: *A one-half undivided interest in*: That portion of the Rancho Santa Gertrudes. . . .'' (Emphasis added; the portion in italics represents an interlineation by the trial court.)

the real property in question had not been inventoried or disposed of in the original proceeding. After obtaining an inventory and appraisement from the court, she gave notice of sale of the property, in conformance with section 780 of the Probate Code. The property was sold for the sum of $750 cash, which was the highest and only offer made for the property. The administratrix petitioned the court for an order confirming the sale and directing execution by her of a conveyance to the purchaser. She alleged that the sale was fairly and regularly made and was in the best interest of the estate.

The administratrix opposed petitioner's request for distribution on the further ground that the assignment claimed by him was obtained by the exercise of undue influence on the assignors. She also moved that the court inquire into the consideration for the alleged assignment.

Petitioner filed objections to the confirmation of the sale of the property, alleging that the administratrix and her attorney knew that the offer of $750 was "not a fair or adequate offer for the estate's interest in said land, and such a sale was made solely for the purpose of circumventing objector's interest in said land, as grantee of the heirs at law. . . ." He asserted that the sale was "simply a dummy sale for the purpose of defrauding objector [petitioner] and a fraudulent scheme to permit Charlotte Cawest [sister of administratrix] and Caroline Bingman [administratrix] to obtain control of said land by defeating the claim of objector." He asserted that confirmation of the sale would be confirmation of "the perpetration of a fraud."

After a hearing on the petition for distribution, the court made findings of fact and conclusions of law and adjudged petitioner to have no interest as an heir, assignee, or otherwise in and to the property in question or any other asset belonging to the estate. The petition of the administratrix for confirmation of the sale of the property, however, was also denied, on a finding that the sum of $750 was not sufficient consideration for the property.

A decree was entered, denying distribution and denying confirmation of the sale. It is from this decree that petitioner appeals.

Petitioner's principal arguments on appeal attack the correctness of the trial court's determinations concerning the alleged transfer from decedent's heirs to petitioner. He argues, *inter alia,* that there is "not one iota" of evidence of

fraud, duress, or undue influence and that there was adequate consideration for the alleged transfers. In arguing the question of consideration, however, petitioner ignores the import of section 1020.1 of the Probate Code, pursuant to which the trial court made its determination and which is set out in the footnote.[1] ▪ As was stated in *Estate of McPherson,* 94 Cal.App.2d 906, 908 [212 P.2d 41]: "This section [§ 1020.1] requires the probate court to inquire into the consideration for assignments . . . and into the circumstances surrounding the execution thereof. If the court finds the consideration grossly unreasonable, or that the assignment was procured by duress, fraud, or undue influence, it may refuse to make distribution under the assignment, except upon such terms as it deems just and equitable." ▪ The *McPherson* opinion also states (p. 909): "Application of the Probate Code section involved [§ 1020.1] must be left in great measure to the sound discretion of the probate judge. ▪ And appeals from orders made pursuant to the section are governed by the general rules on appeal in this state." The court quotes from *Estate of Isenberg,* 63 Cal.App.2d 214 [146 P.2d 424], at page 216: " 'It is the general rule that on appeal an appellate court will (a) view the evidence in a light most favorable to respondent, (b) not weigh the evidence, (c) indulge all intendments which favor sustaining the finding of the trier of fact, and (d) not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof. . . . ▪ [T]he power of an appellate court *begins* and *ends* with a determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' " (*Estate of McPherson, supra,* pp. 909-910.)

---

[1] Probate Code section 1020.1 provides, in pertinent part: "The court before making distribution of any property of a decedent to any assignee or transferee of any heir, devisee or legatee or before making distribution to any person other than an heir, devisee or legatee pursuant to any agreement, request or instructions of any heir, devisee or legatee or of any attorney-in-fact of any heir, devisee or legatee may on the motion of any person interested in the estate or on the motion of the public administrator or on its own motion inquire into the consideration for such assignment, transfer, agreement, request or instructions and into the amount of any fees, charges, or consideration paid or agreed to be paid by the heir, devisee or legatee and into the circumstances surrounding the execution of such assignment, transfer, agreement, request or instructions and if it finds that the fees, charges or consideration paid by any such heir, devisee or legatee is grossly unreasonable or that any such assignment, transfer, agreement, request or instructions was obtained by duress, fraud or undue influence it may refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable."

Petitioner argues, however, that section 1020.1 of the Probate Code does not apply in the instant case. He asserts that the code section was enacted for the control of "heir hunters" in pending estates, particularly those who obtain from an heir an agreement to pay a "finder's fee" or to execute an assignment of large percentages of their interest in an estate in return for the hunter's establishing and recovering the heir's interests. ■ While it may be true that the original motivation behind the enactment of the section was prevention of a disproportionate share of an inheritance being paid to heir hunters and permitting the court to set such assignments aside if they were found to be inequitable, nevertheless it would seem from the cases that this is not the sole purpose of the section. The section provides, *inter alia,* that the court may, even on its own motion, inquire into the consideration of an assignment, transfer, agreement or request for instruction, and into the amount of fees charged, and into the circumstances surrounding the execution of the instrument. *Estate of McPherson, supra,* for example, involves no heir hunters. The question there concerned the circumstances surrounding the alleged assignment by an aging mother to a daughter. In that case, the mother was 82 years of age, could neither read nor write, and had no recollection of signing the instrument. In 21 California Jurisprudence 2d, Executors and Administrators, section 776, page 182, it is stated: "Although this section [§ 1020.1] has been construed to give the probate court some control over heir-hunter assignments, it does not mention heir hunters, but refers in general terms to any assignee or transferee and to any person other than an heir, devisee, or legatee who claims the right to distribution pursuant to agreement with or instructions by such beneficiary. It therefore enlarges the powers of the probate court with respect to all such assignments or agreements. . . ." And in *Estate of Auslender,* 53 Cal.2d 615, 630 [2 Cal.Rptr. 769, 349 P.2d 537], the court said: "Under section 1020.1 of the probate code the court may refuse to make distribution pursuant to an assignment, except on terms it deems just and reasonable, where it finds the consideration unreasonable or where the assignment was obtained by fraud, duress or undue influence. . . ."

It would appear, therefore, that petitioner's argument that the use of the words "paid for" (in reference to consideration) in section 1020.1 prohibits its application in the instant case is refuted by the cases. ■ We must, therefore, affirm

the trial court's conclusion that petitioner has no interest in the subject property if there is substantial evidence to sustain the finding that the purported assignment by the heirs to petitioner and his then wife was made without consideration.

■ And, if such evidence can be found, petitioner's argument that the transfer to him was not obtained by fraud, duress, or undue influence—the other ground for a court's properly refusing to make distribution under an assignment (*Estate of McPherson, supra*, at p. 908)—need not be discussed since the court's decree can be sustained on the ground of failure of consideration alone.[2]

■ It is axiomatic that whether or not consideration is "grossly unreasonable" depends, in part, on the actual value of the property involved as compared with the value of the alleged consideration, if any. ■ As to the value of the property, there was abundant evidence. Vernon Blythe, a real estate broker located in the city in which was also located the subject property, testified that he had been in the real estate business in that city for 20 years, was familiar with property values generally in the area, and was quite familiar with the subject property in particular. With reference to its value, he testified: "Q. By Mr. Hitchcock: Can you state what in your opinion was the value of [the subject property] . . . in the year 1950? A. About $4950. Q. $4950? A. Yes. Q. Now, Mr. Blythe, can you state from your experience what the value of this particular property is at the present time? A. Approximately 15 to 20 thousand dollars depending on how many lots I can get to be approved by the Planning Commission."

Petitioner himself testified as to the value of the property. Although he said he valued it at only $200 an acre in 1950, he admitted on cross-examination that in 1956 he placed a value of $5,000 an acre on the approximately 3.8-acre tract, for a total value of about $19,000. The exact language of the testimony is as follows: "Q. You placed a value on that property at that time [1956] of $5,000 an acre, did you not?

---

[2]Similarly, the court need not reach petitioner's apparent argument that failure to make a finding as to whether there was fraud, duress, or undue influence in obtaining the transfer was error. It might be noted in passing, however, that this question was raised by the administratrix, not by petitioner, by allegation in her opposition to his petition; failure to make a specific finding on this question, therefore, can hardly be said to prejudice petitioner where there is also present a separate and adequate ground for affirmance.

A. I believe that is right.   Q. Yes, and yet in 1950 you placed a value on it of $200; is that right?   A. That's true.''

■ On the question of what, if anything was paid as ''consideration'' to decedent's heirs for their interest in the property, the trial court in its memorandum decision stated, ''. . . there was no consideration whatsoever for the execution of the quitclaim deed. It is claimed that the consideration was the reimbursement for taxes paid but this reimbursement came from the sale of a portion of the property to the County for a storm drain easement and would have come to the parties in any case.'' Petitioner's testimony in this regard on cross-examination is as follows: ''Q. Now, did you actually at this time that this deed was executed pay anything to either Mrs. Bryant or Mrs. Skidmore [the two heirs of decedent from which petitioner claims the assignment]? A. I did not.   Q. Now, did you ever pay anything to Mrs. Bryant? A. Yes.   Q. And what did you pay her? A. The two checks from the condemnation proceeding of the 1952 Flood Control Project [which took a portion of the land of which the subject property was also a part].'' And, ''Q. Now, had you ever paid to her [Mrs. Bryant], other than turning over the checks that you received on the condemnation of this property, any money whatsoever? A. No.''

Petitioner argues that ''[t]he court completely disregarded the fact that at least half of the money received from the Flood Control District belonged to Mr. and Mrs. Townsend [petitioner and his then wife], and would *not* have 'come to the parties in any case.' '' (Italics added.) This argument stems from the fact that the one-half undivided interest *not* in issue in this case was owned by petitioner, who had acquired this one-half from the ''Wiley Interests,'' not involved herein. Petitioner argues, in effect, that *three years after* the alleged assignment to him of the one-half interest which is in issue, proceeds from the sale of part of his one-half interest to the district were turned over to his alleged assignors and therefore constituted consideration for the transfer he claims was effected three years previous. This argument is specious.

■ Petitioner admits that the amount paid to the alleged assignors representing his interest in the sale to the district was only $90. While we need not decide the question, it would nevertheless seem that the trial court would have been justified in finding no substantial consideration even if the $90 had been turned over to the alleged assignors at the time of the alleged assignment, considering the substantial evidence of

the value of the property, since the test of Probate Code section 1020.1 is, *inter alia,* whether the consideration is "grossly unreasonable" (see footnote 1, *supra).* However, since this sum was turned over to the alleged assignors some *three years after the alleged assignment* upon the fortuitous event of the taking of a portion of the property by the Flood Control District, it seems clear that petitioner cannot now claim that it constituted consideration sufficient to avoid the applicability of section 1020.1. ■■■ And, of course, the fact that petitioner may have paid taxes on the land does not constitute "consideration" that would make an otherwise invalid assignment valid; the voluntariness of these payments is amply shown by petitioner's own assertion of his ownership of the one-half Wiley-originated portion of the property, which is not in issue in the instant case.

■■■ Petitioner also apparently argues that it was prejudicial error for the court to fail to make a finding as to the value of the subject property on the date of the alleged assignment. However, there is *no* evidence that the property was worthless, and there is abundant evidence that it had a substantial monetary value (despite the conflict over what this value was.) Since the court *did* find that there was *no* consideration given for the purported assignment, it would seem that failure to find the precise value of the property at the time of that assignment, if error at all, was harmless. So long as the property had any substantial value at all, it cannot be said that a conclusion that the consideration was "grossly unreasonable" is wrong where there was *no consideration at all.* ■■■ Finally, "Section 1020.1 does not require the court to make any findings or any order as to the effectiveness of an assignment otherwise than by an order for distribution." *(Estate of Ramsey,* 107 Cal.App.2d 372, 376 [237 P.2d 20].)

Since there are sufficient reasons for affirming the trial court, petitioner's several arguments urging that there were no defects in the instrument which he asserts effected the assignment need not be discussed.

Similarly, discussion of petitioner's arguments concerning rules of transfer of real property which ignore the import and applicability of section 1020.1 would gain nothing.

■■■ Finally, petitioner argues that the administratrix could not properly object to petitioner's petition for distribution. Specifically, he argues that she is not "[a]ny person interested in the estate or any coexecutor or coadministra-

tor [who] may resist the application'' as provided for in section 1020[3] of the Probate Code. He bases his argument, primarily, on the fact that the subject property was not included in decedent's will. He forgets, however, that, in general, property owned by a person at her death is part of her estate, whether mentioned in her will or not. The court properly found that the administratrix was interested in the *estate* because she was named in decedent's will. The test of section 1020 is not interest in the property at issue, but in the estate as a whole. The court was correct in allowing Caroline Bingman to object to the petition for distribution.

The decree is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied July 25, 1963, and the opinion was modified to read as above. Appellant's petition for a hearing by the Supreme Court was denied August 20, 1963.

---

[3]Petitioner actually cites section 1000 as the basis of this argument. The code language quoted by him, however, makes it clear he is relying on section 1020.