835 P.2d 458

Dale Michael LANDI, Plaintiff-Appellee,

v.

Bernard ARKULES and Barbara Arkules, husband and wife; David Arkules and Stacy Arkules, husband and wife; Nancy Moorehead & Associates, an Illinois business entity; Nancy Moorehead and George Moorehead, wife and husband, Defendants-Appellants.

Nos. 1 CA–CV 89–361, 1 CA–CV 89–505.

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 9, 1992.

Reconsideration Denied March 3, 1992.

Petition and Cross-Petition for Review
Denied Sept. 15, 1992.

**128**

Kaye, Scholer, Fierman, Hays & Handler by Daniel H. Williams III, Los Angeles, Cal., and Ridenour, Swenson, Cleere & Evans by James W. Evans, John T. Moshier, Barbara B. Maroney, Phoenix, for plaintiff-appellee.

Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C. by Robert C. Hackett, David W. Dow, Michele M. Feeney, Thomas M. Quigley, Arthur W. Pederson, Phoenix, for defendants-appellants.

## AMENDED OPINION

LANKFORD, Judge.

Defendants filed separate notices of appeal from a judgment entered by the superior court in favor of the plaintiffs and from the superior court's denial of defendants' motion for a new trial. We consolidated these appeals for decision.

Defendants have presented three issues for review:

1) Did the trial court properly apply Arizona law rather than New York or Illinois law in interpreting an "heir finder" agreement?

2) Did the trial court err in finding that the "heir finder" contract was unenforceable as contrary to public policy?

3) Are the defendants entitled to payment for services rendered on the basis of *quantum meruit?*

We issued an opinion affirming the trial court's judgment and its denial of defendants' motion for a new trial. Defendants then filed a motion for reconsideration, which we granted. This amended opinion clarifies our prior opinion and also affirms the trial court's rulings.

### I.

In late 1987, in the course of randomly reviewing probate files in Maricopa County, defendant David I. Arkules discovered the estate of Roi Landi Yelverton ("Yelverton"), who had apparently died leaving no known heirs. David Arkules' search was done for an Illinois heir locating business, Moorehead & Associates, operated by his sister, Nancy Moorehead ("Moorehead"). David Arkules' intention was to locate and offer to assist any heirs in establishing a claim to the estate in return for a share of the estate.

David Arkules conducted genealogical research in an attempt to identify and locate heirs to the Yelverton estate, and he eventually entered into agreements with three potential heirs of the estate. Bernard Arkules, a licensed Arizona attorney and the father of both David Arkules and Nancy Moorehead, then represented these potential heirs in the Yelverton probate proceedings.

On March 21, 1988, an assistant attorney general informed Bernard Arkules of the existence of an heir with claims superior to those of Bernard Arkules' clients. This information was conveyed to David Ar-

kules who then located Dale Michael Landi ("Landi"), the son of Yelverton, in New York. On March 25, 1988, David Arkules and Landi executed an agreement in which Landi appointed Moorehead "to do all things necessary to obtain the inheritance." The agreement further provided that Moorehead would retain an attorney and pay the expenses for researching and proving the validity of Landi's claim of inheritance, including attorney's fees. In exchange, Landi assigned to Moorehead forty percent of any inheritance which Landi might receive.

Subsequently, Bernard Arkules contacted Landi by telephone and agreed to send Landi genealogical materials. On March 31, 1988, Bernard Arkules sent a letter to Landi on his legal stationery in which he provided Landi with Yelverton's family history and gave Landi advice regarding probating the Yelverton estate, including the potential tax liability of the estate.

Landi subsequently hired an attorney who responded with a letter to Bernard Arkules stating that Bernard Arkules was not authorized to act on Landi's behalf, and that the agreement Landi had signed was unenforceable.

On April 22, 1988, Landi filed a complaint in Maricopa County Superior Court to rescind the heir locator agreement and have it declared void and unenforceable or, in the alternative, to have the agreement reformed to establish a fair and equitable fee.

Landi then filed three motions for summary judgment. In the initial motion, he argued that the agreement was unenforceable on three grounds: first, an Arizona statute renders heir finding agreements unenforceable when the fee exceeds thirty percent; second, the defendants were acting as heir finders in Arizona without first having obtained an Arizona private investigator license; and third, there was a failure of consideration.

Landi's next motion for summary judgment claimed that the agreement was unenforceable because the parties did not intend to create a binding contract.

Landi's final motion for summary judgment argued that the agreement was void *ab initio* as illegal and contrary to public policy because it required Moorehead to engage in the unauthorized practice of law. Landi argued that the agreement required Moorehead to establish a claim in Arizona courts although she was not a licensed Arizona attorney. Landi further asserted that the agreement to hire an attorney and pay all fees in pursuit of these claims was improper solicitation of an attorney and constituted acting as a middleman for profit in judicial proceedings in violation of Arizona Rules of the Supreme Court, Rule 42, E.R. 7.3.

The superior court judge considered these summary judgment motions together, granted the first motion in part on the grounds that the agreement violated Arizona law, and declared the agreement rescinded and unenforceable. He reasoned that the forty percent fee enumerated in the agreement rendered the agreement unenforceable as a matter of law because it was contrary to the express provisions of Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–890. He further found that Moorehead could not enforce the agreement because she did not have an Arizona private investigator's license and that the agreement was illegal and void *ab initio* as against public policy. The trial court denied the motion for summary judgment with regard to failure of consideration and found that the above findings rendered moot the issue of the parties' intent to create a binding contract. The court later entered an appropriate final judgment.

The defendants then filed a motion for new trial on the ground that the Arizona Department of Public Safety had recently granted Moorehead and David Arkules licenses as private investigators. The superior court determined that the newly-obtained licenses did not alter its earlier legal conclusions. The defendants filed separate appeals from the entry of judgment and from the denial of the motion for new trial. We consolidated these appeals for decision.

## II.

On appeal from the granting of the motions for summary judgment, we will view the facts and draw all reasonable inferences in the defendants' favor. Ariz.R.Civ.P. 56; *Woerth v. City of Flagstaff*, 167 Ariz. 412, 416, 808 P.2d 297, 301 (App.1990); *Cecil Lawter Real Estate School, Inc. v. Town & Country Shopping Center Co., Ltd.*, 143 Ariz. 527, 537, 694 P.2d 815, 825 (App.1984). We are not bound by the trial court's determinations as to matters of law. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 244, 650 P.2d 1222, 1226 (1982); *Stika v. Albion*, 150 Ariz. 521, 724 P.2d 607 (App.1986). We will review the denial of the motion for new trial for an abuse of discretion. *Suciu v. AMFAC Distributing Corp.*, 138 Ariz. 514, 520, 675 P.2d 1333, 1339 (App.1983).

## III.

Defendants first argue that the trial court erred in applying Arizona law rather than Illinois or New York law in interpreting the legality and enforceability of this agreement because the contract provided that Illinois law would apply to disputes arising from the agreement. In the alternative, defendants argue that New York law should apply because the agreement was negotiated and signed in that state.

■ Arizona courts follow the RESTATEMENT (SECOND) OF CONFLICT OF LAWS ("RESTATEMENT OF CONFLICTS") in determining choice of law issues. *Burr v. Renewal Guaranty Corp.*, 105 Ariz. 549, 550, 468 P.2d 576, 577 (1970). This court will apply the law of the state chosen by the parties as to issues that could have been resolved by an explicit provision in the contract. RESTATEMENT OF CONFLICTS § 187. The legality and validity of a contract provision, however, cannot be resolved by an explicit provision in the contract: it is a question of law. *See id.* at comment d, 1988 Supp., p. 137. Therefore, we will apply the rule that the law chosen by the parties governs unless that law is contrary to the fundamental policy of a state with a materially greater interest in the issue. *Id.* at pp. 139–40. If the parties choose the law of a state

which would declare the contract invalid, however, we will presume that the parties made this choice by mistake and will not apply the chosen law. *Id.* § 187, comment e, 1988 Supp., p. 138.

■ In this case, as is discussed at length in Part IV of this decision, conducting heir locating investigations in Arizona is an activity that requires licensing in Arizona as a private investigator. Neither David Arkules nor Moorehead were licensed private investigators. Because Illinois law makes contracts void where a party to the contract fails to obtain a required license necessary to his performance of the contract, Illinois law would render the agreement unenforceable. *See T.E.C. & Assoc., Inc. v. Alberto–Culver Co.*, 131 Ill. App.3d 1085, 87 Ill.Dec. 220, 228, 476 N.E.2d 1212, 1220 (1985) (failure to obtain license required by statute made contract void and unenforceable). *Accord Broverman v. City of Taylorville*, 64 Ill.App.3d 522, 21 Ill.Dec. 264, 381 N.E.2d 373 (1978).

Even if Illinois law would not invalidate the contract, we find that Arizona has a materially greater interest in applying its law rather than that of Illinois. Because this case concerns issues which the parties could not have resolved by explicit agreement, RESTATEMENT OF CONFLICTS § 187(2) applies. Illinois law is inappropriate in this instance because Illinois has no substantial relationship to the parties or to the transaction and no reasonable basis exists for applying Illinois law. RESTATEMENT OF CONFLICTS § 187(2)(a). Further, application of Illinois law would be contrary to a fundamental Arizona policy regarding regulation of private investigations conducted within Arizona's borders. Arizona has a materially greater interest than Illinois in determination of this particular issue, as measured by the factors set forth in the RESTATEMENT. RESTATEMENT OF CONFLICTS § 187(2)(b); *see id.* § 188 (*see* discussion *infra*). The only relationship of the parties or transaction to Illinois is that the offices of Moorehead & Associates are located there. In contrast, the search for Yelverton's missing heirs began in Arizona; the claims against the estate were made here; and the real prop-

erty which forms the bulk of the estate is located here. Arizona has a basic public policy interest in regulating conduct within its borders.

We conclude that the superior court correctly followed the RESTATEMENT OF CONFLICTS and correctly declined to apply Illinois law in this case.

 Defendants argue in the alternative that New York law, as the law of the place where the contract was negotiated and signed should be applied to this case. We disagree. When the parties' choice of law is not effective, the law of the state having the most significant relationship to the transaction and to the parties is applied. *Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 257–58, 735 P.2d 1373, 1380–81 (App.1987).

RESTATEMENT OF CONFLICTS § 188 states in pertinent part:

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT OF CONFLICTS § 6 provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Arizona is the state with the most significant contacts: the search for Yelverton's missing heirs began in Arizona, the claim against the estate was made here, and the real property constituting the bulk of the Yelverton estate is located here. Arizona is both the state in which the performance of this agreement would occur and the location of its subject matter. New York's connection, as the state in which the contract was negotiated and signed, is far less important in the context of this case and in light of the RESTATEMENT OF CONFLICTS § 6 principles. Almost all of the issues in this case involve the activities of defendants pursuant to the contract which were performed in Arizona and, therefore, implicate Arizona public policy. The superior court correctly selected Arizona law as having the most significant relationship to the parties and the transaction.

## IV.

The defendants next contend that the trial court erred in declaring the agreement void as contrary to Arizona's public policy. The defendants argue that A.R.S. § 12–890 specifically authorizes agreements to pay for assistance in recovering property.

We agree that agreements to pay for assistance in recovering property are not *per se* invalid. However, because this agreement also involved the improper solicitation of an attorney, an excessive fee, and the performance of investigative services by persons not licensed as private investigators, we affirm the trial court's judgment.

### A.

The defendants argue that the agreement only required Moorehead to provide genealogical services and to hire an attorney to prosecute Landi's claims to the estate. They argue that this alone does not amount to anything improper. According to defendants, Moorehead was Landi's agent and as such was ethically obligated to act in Landi's best interests. This obligation, defendants say, included the employment of an attorney for Landi. For further support, defendants cite Arizona Rules of the Supreme Court, Rule 42 ("Rule 42"), E.R. 1.8(f), for the proposition that third parties properly may hire attorneys and, therefore, Moorehead's employment of Bernard Arkules was permissible.[1]

Under the Arizona Constitution, the Arizona Supreme Court determines who may practice law in Arizona and the rules for conducting such practice. *Hunt v. Maricopa County Employees Merit System Comm'n*, 127 Ariz. 259, 261–62, 619 P.2d 1036, 1038–39 (1980). The Arizona Supreme Court's ethical rules provide that attorneys may accept referrals and payment by third parties in certain limited situations but must "not accept employment . . . as a result of [improper advertising]." Rule 42, E.R. 7.2. The comment to E.R. 7.2 notes that a lawyer is "not permitted to pay another person for channeling professional work." A lawyer also "may not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship in person or by telephone, when a motive for the lawyer's doing so is the lawyer's pecuniary gain." Rule 42, E.R.

7.3 (as amended, effective August 1, 1989).[2] Although Moorehead is not an attorney, Bernard Arkules is an Arizona attorney, and as such is prohibited from engaging in unethical conduct through others, such as investigators. *See Matter of Carroll*, 124 Ariz. 80, 85, 602 P.2d 461, 466 (1979).

Rule 42, E.R. 1.8(f) cited by the defendants is inapplicable. That rule provides that an attorney "shall not accept compensation for representing a client from one other than the client" unless three specific requirements are met. Nothing in this rule authorizes a third party to actively seek out clients for an attorney.

The record supports the conclusion that client solicitation by Moorehead on behalf of Bernard Arkules was a common practice. For example, three other potential heirs in the Yelverton estate were located by Moorehead and David Arkules and then represented by Bernard Arkules in Arizona Probate Court. No evidence in the record controverts this pattern of solicitation.

This situation was not a mere referral of an investigator's client to an attorney. Under the contract, Moorehead was obligated to hire an attorney, was free to select the attorney, selected Bernard Arkules, and was bound to pay all fees and costs associated with Bernard Arkules' representation of Landi in prosecuting his claim in the Yelverton estate. The agreement in this case involves an improper solicitation of a client for an attorney. Therefore, we agree with the superior court that this agreement is unenforceable.

---

1. The defendants also argue that the trial court's ruling that the defendants' activities constituted intervening for profit in legal proceedings and commercially exploiting the legal profession was in fact a finding that Moorehead had engaged in champerty, and that because champerty is not recognized in Arizona, the contract could not be declared contrary to public policy for that reason. *See Strahan v. Haynes,* 33 Ariz. 128, 262 P. 995 (1928) (doctrine of champerty or maintenance does not apply in Arizona). *See also Richfield Oil Corp. v. La Prade,* 56 Ariz. 100, 105 P.2d 1115 (1940) (contingent fee agreement not invalid under Arizona law). While we agree with the defendants that champerty is not recognized in Arizona, because we hold that the activ-

ities are contrary to public policy as they require the improper solicitation on behalf of an attorney, we need not address whether the trial court improperly declared the agreement champertous.

2. The prior version of this rule included a prohibition on solicitation by mail, but this provision was amended pursuant to *Shapero v. Kentucky Bar Ass'n,* 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988) (declaring that prohibitions on direct mail solicitation of prospective clients violates the first amendment to the United States Constitution).

## B.

■ The agreement in this case specified that Moorehead would receive forty percent of any inheritance Landi recovered. The trial court ruled that A.R.S. § 12–890 declares such an agreement unenforceable if the fee "exceeds thirty percent of the value of the recoverable property."

The defendants contend, however, that this statutory provision only applies to the recovery of property escheated to the state and not to property recovered in probate proceedings. Although we agree that A.R.S. § 12–890 literally applies only to the recovery of property already escheated to the state, we find that the public policy expressed in that statute applies to an heir locator agreement for estate property. The Legislature's declaration of public policy is similarly expressed in A.R.S. § 44–335, which limits fees to thirty percent for agreements to locate abandoned property.

■ An agreement is unenforceable if the acts to be performed would be illegal or violate public policy. *White v. Mattox*, 127 Ariz. 181, 619 P.2d 9 (1980); *Mountain States Bolt, Nut & Screw v. Best–Way Transp.*, 116 Ariz. 123, 568 P.2d 430 (App. 1977). At the very least, the portion of fees exceeding the legislative limit of thirty percent cannot be collected without violating Arizona public policy. Whether an agreement for an excessive fee renders the entire fee uncollectible is a more difficult question. However, we need not decide the extent to which the agreement might be otherwise enforceable because the entire agreement is void for the reasons explained below.

## C.

■ This agreement is unenforceable because neither David Arkules nor Moorehead were licensed Arizona private investi-

gators at the time they conducted their research and entered into the heir locator agreement with Landi. Arizona law requires a person conducting a private investigation business in Arizona to be licensed. A.R.S. § 32–2410. For purposes of the Arizona licensing statute, a private investigator is one who:

> [F]or any consideration, engages in business or accepts employment to furnish, or agrees to make, or makes, any investigation for the purpose of obtaining information with reference to:
>
> . . . .
>
> (b) The identity . . . of any person.
>
> . . . .
>
> (e) Securing evidence to be used before any court, board, officer, or investigation committee.

A.R.S. § 32–2401(3).

The defendants admit that neither David Arkules nor Moorehead were licensed as private investigators at the time they entered into the agreement. They argue, however, that they need not be licensed as private investigators for several reasons: (1) New York law does not require an heir finder to be licensed as a private investigator; (2) the contract did not require performance of private investigation services; (3) Moorehead had applied for and had substantially complied with the licensing requirement prior to entering into the agreement; and (4) any failure to obtain a private investigator's license does not bar the right to compensation.

Although in New York, a person in the business of tracing unclaimed assets need not be licensed as a private investigator, *Shpack v. Baretti*, 75 Misc.2d 901, 349 N.Y.S.2d 256, 258–59 (N.Y. City Civ.Ct. 1973), New York law does not govern the actions of persons conducting a private investigation in Arizona.[3] In this case, the

---

3. The fact that Moorehead and Arkules were not required to be licensed in New York, or may have been licensed in another state, does not relieve them of their obligation to comply with Arizona law when engaged in the business of private investigations within this state. A professional person licensed in one state is generally not entitled to compensation for services rendered in another state in which the professional person is not licensed. *See Annot.*, 11 A.L.R.3d 907 (1967) (attorneys); 32 A.L.R.3d 1151 (1970) (architects). *Cf. Thomas v. Lundgren*, 9 Ariz. App. 94, 449 P.2d 628 (1969) (architects' contract to deliver plans already prepared for another was not voidable because it was not a

existence of the Yelverton estate was discovered upon a review of Maricopa County probate files. The defendants then began attempting to identify and locate persons who were heirs to the Yelverton estate. Although this investigation took them to places outside the State of Arizona, the investigation began in Arizona and had as its purpose the securing of evidence to be used before an Arizona probate court. An Arizona private investigation license was required to conduct this investigation in Arizona. *See* A.R.S. § 32–2410.

■ We also reject the defendants' argument that the contract did not require the performance of private investigative services and that the activities conducted by Moorehead through David Arkules fell outside the scope of the licensing statute. Defendants assert that they agreed to provide genealogical information, not investigation, and that their heir locating research was not conducted for compensation.

The "genealogical research" contracted for in this case was an attempt to obtain information about the "identity of [a] person" and thus falls squarely within A.R.S. § 32–2401. The investigation also fell within the statute because this information was potential "evidence to be used before [a] court" to prove Landi's superior right to the estate. *Id.*

The defendants' assertion that they did not perform services with the expectation of compensation is wholly without merit. David Arkules candidly stated in his affidavit that his intention in reviewing probate files in Maricopa County Superior Court was "to offer to assist the potential heir in establishing the claim to the estate in exchange for a contingent fee." Although at the time the activities occurred, the defendants bore some risk of being uncompensated, the promise to pay upon success is clearly "consideration." *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 71, 75. Because David Arkules was acting on behalf of Moorehead & Associates during this transaction, either he or his employer needed to obtain a private investigator's license. *See* A.R.S. § 32–2422.

contract for architectural services within the

Although not controlling, an opinion of the Attorney General concurs with our conclusion that persons who provide heir locating services must be licensed as private investigators. Op.Atty.Gen. No. I87–020. That opinion determined that such services constitute an "investigation for the purpose of obtaining information with reference to ... the identity ... of [a] person." A.R.S. § 32–2401.

■ We also reject Moorehead's claim that the court should not prohibit her recovery under the agreement for failure to obtain a private investigator's license. Moorehead applied for an Arizona private investigator's license on January 4, 1988, two and one-half months prior to entering into the contract with Landi. Moorehead argues that she "substantially complied" with all of the licensing requirements except for an unconstitutional residency requirement. Nevertheless, what Moorehead calls substantial compliance is, in fact, noncompliance. A.R.S. § 32–2410 provides that, "[n]o person shall engage in a business ..., act or assume to act as ... a licensee unless he is licensed under this chapter...." Both Moorehead and David Arkules acted without a license at all relevant times in this case. Only after the lawsuit was filed did Moorehead receive her license. Her later receipt of the license did not cure the prior misconduct of operating as a private investigator without a license.

We find that defendants' theory of substantial compliance does not validate the contract. Neither Moorehead nor David Arkules were licensed. Neither was qualified to act as an heir finder in Arizona.

### D.

Having rejected defendants' arguments that they were not required to be licensed and that they had substantially complied with the licensing statute, we turn to the underlying issue: is the contract unenforceable because defendants were not licensed as required by law?

meaning of statute).

■ We believe that the contract is unenforceable. Defendants' performance of the contract involved the unlawful act of conducting a private investigation without a license. A.R.S. § 32–2410. The failure to obtain a license, permit, or certificate does not invalidate every contract as contrary to public policy. *See Mountain States Bolt*, 116 Ariz. 123, 568 P.2d 430. However, the regulation of private investigators is so infused with important public policy considerations that a contract to perform investigations is, in the absence of a license, unenforceable.

■ The public policy behind licensing and regulating private investigators is apparent from the Legislature's enactments. Qualifications for licensing are set forth by statute and include the applicant's good moral character and prior investigative experience. A.R.S. § 32–2412(A). The statute imposes specific duties on licensees with respect to the confidentiality and accuracy of information and the disclosure of investigative reports to the client. A.R.S. § 32–2425. A license may be suspended or revoked for a wide range of misconduct, including acts of dishonesty or fraud, aiding the violation of a court order, or soliciting business for an attorney. A.R.S. § 32–2427.

The Legislature's concern for the protection of the public from unscrupulous and unqualified investigators is apparent. This concern for the public's protection precludes enforcement of an unlicensed investigator's fee contract. *Shorten v. Milbank*, 170 Misc. 905, 11 N.Y.S.2d 387 (1939), *aff'd*, 256 App.Div. 1069, 12 N.Y.S.2d 583 (1939). The courts will not participate in a party's circumvention of the legislative goal by enforcing a fee contract to provide regulated services without a license. *Cf. Hall v. Bowman*, 88 Ariz. 409, 357 P.2d 149 (1960) (courts will not become party to collection of fees by unlicensed cemetery lot salesman).

For the above reasons, we affirm the trial court's judgment finding this agreement unenforceable as contrary to public policy.

■ Defendants finally argue that even if the agreement is unenforceable, this court should allow the defendants to recover on an equitable claim for relief they label *"quantum meruit." Quantum meruit* is actually a measure of damages, not a remedy. Recovery under *quantum meruit* is based on the value of services rendered. The claim for relief is for unjust enrichment. DAN B. DOBBS, HANDBOOK ON THE LAW OF REMEDIES ("DOBBS ON REMEDIES") § 4.2, at 232–39 (1973).

■ To recover *quantum meruit* damages for unjust enrichment under the present circumstances, a claimant must prove (1) that he is entitled to restitution, i.e., that the other party was "unjustly enriched at the expense" of the claimant; (2) that he rendered services which benefitted the other party; and (3) that he conferred this benefit under circumstances which would render the other party's retention of the value without payment inequitable. RESTATEMENT OF RESTITUTION §§ 1, 40.

The defendants' theory is a claim for relief, not a defense: the availability of *quantum meruit* damages does not prove the validity of the contract, and therefore, is not a defense to Landi's claim in this case that the contract was void. In order to raise a claim for relief, the pleader must set forth in an appropriate pleading a "short and plain statement of the claim showing that the pleader is entitled to relief." Ariz.R.Civ.P. (A.R.C.P.) 8(a). The purpose of this rule is to provide "fair notice of the nature and basis of the claim" to the opposing party. *See Mackey v. Spangler*, 81 Ariz. 113, 115, 301 P.2d 1026, 1027–28 (1956).

■ In this case, the defendants failed to assert the cause of action for unjust enrichment as a claim (or more precisely, as a counterclaim) in any pleading. Instead, they simply referred to it in response to plaintiff's first motion for summary judgment. Neither a motion for summary judgment nor a response to that motion is a "pleading" pursuant to A.R.C.P. 7(a).

Rather, a motion for summary judgment is an application to the court relating to disposal of a particular issue. *See* A.R.C.P. 7(b); 56.

■ Because the claim for damages for services performed by defendants arises from the same transaction as the contract which Landi sued to invalidate, the defendants were required to raise the claim as a compulsory counterclaim. A.R.C.P. 13(a). *See Occidental Chemical Co. v. Connor*, 124 Ariz. 341, 344–45, 604 P.2d 605, 608–09 (1979). Defendants asserted no counterclaim. Nor did they raise *"quantum meruit"* as an affirmative defense. *See* A.R.C.P. 8(d).

■ Nevertheless, even if this theory were properly presented in the trial court by being mentioned in the response to the motion for summary judgment, the trial judge properly rejected it. He correctly determined that equitable relief is not available when recovery at law is forbidden because the contract is void as against public policy. Professor Dobbs stated in DOBBS ON REMEDIES § 13.5, at 994–47 that:

> The rule is that a contract whose formation or performance is illegal is, subject to several exceptions, void and unenforceable. But this is not all, for one who enters into such a contract is not only denied enforcement of his bargain, *he is also denied restitution for any benefits he has conferred under the contract....*
>
> The rule against restitution applies not only to contracts that involve a direct violation of the law by both parties, but also to contracts involving conduct deemed unconscionable or morally improper. In effect, the *"clean hands" approach is applied to deny not only enforcement but also restitution where the claimant's conduct is either illegal or immorally motivated....*
>
> ....
>
> If restitution were granted, this may in some situations, prove tantamount to enforcement. At the very least, it would provide a floor or cushion on which an illegal actor might fall back, sure that if his illegal conduct were not challenged,

he could profit by it, and that if it were challenged, he could at least get his money or property back. This would no doubt encourage such illegal contracts. In quite a few situations, then, it seems proper to deny both enforcement of the bargain on a contract basis and restitution. Though a denial of restitution leads, as in both the examples given above, to unjust enrichment, this has generally been deemed a less weighty consideration than the policy of discouraging illegal bargains.

(Emphasis added; footnotes omitted). *See also* RESTATEMENT OF RESTITUTION § 140 and comment.

■ Although Landi may have been benefitted by the defendants' services, equity will not allow defendants to obtain compensation when the services were performed under an illegal contract. The purpose of the licensing statute is to avoid unscrupulous and unqualified persons from performing investigative services. This public policy would be undermined if defendants were assured of receiving compensation for their services despite their unlicensed status. We agree with the trial court and affirm on this issue.

For the foregoing reasons, we affirm the trial court's judgment and its denial of the motion for a new trial. We further grant Landi his request for reasonable attorney's fees on appeal pursuant to Arizona Rules Civil Appellate Procedure Rule 21 and A.R.S. § 12–341.01(A).

TAYLOR, P.J., and CONTRERAS, J., concur.