[S. F. No. 18780.   In Bank.   Jan. 25, 1955.]

CHARLES E. BURCHELL, Individually and as Administrator, etc., Plaintiff, v. CHARLES J. C. STRUBE et al., Respondents; E. WILEY, Appellant.

Robert E. Hatch for Appellant.

Thomas C. Vassar, F. A. Devlin and Edward L. Cragen for Respondents.

Marvin C. Hix, as Amicus Curiae, in behalf of Respondents.

SHENK, J.—This is an appeal from a judgment in an interpleader action which held the appellant's claim to be barred under the defensive plea of res judicata.

Walter C. Cox is in the business of heir-hunting. Lucy Falkner, Charles J. C. Strube, and Reinhold Strube were the heirs of Charles G. Moore. Cox obtained written assignments of 40 per cent of each heir's interest in Moore's estate in consideration for his having revealed the existence of the estate and his promise to devote his time and incur the expense of investigating and procuring proof of their relationship to the decedent. While the estate was in the course of probate in the Superior Court in and for the County of Napa, Reinhold Strube petitioned the court for an order to disregard the assignments to Cox under the authority of Probate Code, section 1020.1. That section provides: "The court before making distribution of any property of a decedent to any assignee or transferee of any heir . . . or before making distribution to any person other than an heir . . . or of any attorney-in-fact of an heir . . . may on the motion of any person interested in the estate or on the motion of the public administrator or on its own motion inquire into the consideration for such assignment, transfer, agreement, request or instructions and into the amount of any fees, charges or consideration paid or agreed to be paid by the heir, devisee or legatee and into the circumstances surrounding the execution of such assignment . . . and if it finds that the fees, charges or consideration paid by any such heir . . . is grossly unreasonable or that any such assignment . . . was obtained by duress, fraud, or undue influence it may refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable."

Cox was properly served and appeared by counsel in opposition to Reinhold's petition. A hearing was had and evidence was taken. The court sitting in probate found that Reinhold

R. Strube, Charles J. C. Strube, and Lucy Falkner were the heirs of Charles G. Moore; that they assigned to Cox 40 per cent of their interest in Moore's estate; that the assignments were obtained by at least high pressure methods; that Cox negotiated for and procured legal representation for the heirs; that Cox is not an attorney-at-law; and that his action in procuring legal representation for the heirs was contrary to public policy; that the public administrator had sufficient information available to have located the heirs without the services of Cox; that Cox's fee of 40 per cent of the heirs' interest in the estate was grossly unreasonable; that the reasonable value of the services rendered by Cox was no more than 10 per cent of the heirs' interest in the estate, and that the heirs were not lost or missing heirs.

The court entered a judgment on December 20, 1949, holding that Cox was entitled to 10 per cent of the heirs' share of Moore's estate. No appeal was taken from that judgment. On March 15, 1950, a decree of final distribution in the matter of Moore's estate was entered. The decree provided that Cox was entitled to 10 per cent of the heirs' distributive share in the estate. No appeal was taken from that decree. On April 28, 1950, Cox assigned all of his right, title, and interest in the assignments of the heirs to him to E. Wiley, the defendant-appellant in this action. Wiley served notice on Burchell, the administrator of Moore's estate, that as Cox's assignee he claimed an additional 30 per cent of the heirs' share of the estate under the assignments executed to Cox by the heirs.

Burchell brought an interpleader action in the San Francisco Superior Court. He alleged that he was the administrator of Moore's estate; that a cash residue remained in the estate; that a final decree of distribution had been entered in which it was adjudicated that Cox was entitled to receive 10 per cent of what the heirs were entitled to receive; that Wiley, Cox's assignee, claimed a right to an additional 30 per cent of what the heirs received; and that the heirs disputed this claim. Burchell named as defendants Charles J. C. Strube, Wiley, Cox, and Carolyn M. Strube, the administratrix of the estates of Lucy Falkner and Reinhold R. Strube, who had died in the meantime. The cash residue was transferred to the clerk of the court and Burchell was discharged from the case.

Wiley filed an answer in the interpleader action in which he admitted the truth of all the allegations in the complaint,

and alleged that he was entitled to the additional 30 per cent of the heirs' share under the terms of the assignments from the heirs to Cox. The heirs filed an answer in the interpleader action in which they denied that Wiley had any interest in any money due them from Moore's estate, and alleged that the judgments rendered in the probate proceedings were res judicata as to Wiley, thereby barring him from asserting his claim in this action.

Upon the trial Wiley waived any right he might have had to a trial by jury. Documentary evidence was submitted by both sides. Wiley introduced copies of the assignment agreements made by Cox with the heirs, and a copy of the assignment by Cox of his interest in the heirs' assignments to Wiley. The heirs introduced a copy of the judgment entered in the proceeding under Probate Code, section 1020.1, and a copy of the decree of final distribution in the matter of Moore's estate.

The trial court found that no appeal was taken from the decree of final distribution and that the time to appeal had expired. It concluded that: "Said decree of the Superior Court for the County of Napa heretofore fully determined and adjudicated all of the rights and liabilities between these parties arising out of or connected with said assignments and is res judicata in respect thereto."

Wiley contends that the trial court erred in sustaining the defense of res judicata, and that he is entitled to a judgment for 30 per cent of the heirs' interest in the money interpleaded in this action. He argues that Probate Code, section 1020.1, vests in the court only a limited control over assignments and agreements involving property in probate for the purposes of distribution; that an order or judgment based upon section 1020.1 for the purposes of distribution does not preclude a subsequent action to enforce the assignment; that any other construction of section 1020.1 would render it unconstitutional as impairing the obligation of contracts and his right to contract, and that, therefore, the defense of res judicata was improperly sustained.

This appears to be the first time that the question of the effect of a final order under section 1020.1 upon a subsequent proceeding based upon the same assignment or agreement considered in the prior section 1020.1 proceeding has been considered by the courts of this state. Exhaustive research has disclosed that apparently every case to date involving section 1020.1 has been one in which an appeal was

taken from an order under that section. It has not been necessary to pass upon the questions here involved in the determination of those cases.

Two basic questions here are: (1) What did the Legislature intend by the enactment of section 1020.1?; and (2) Is that section constitutional?

In *Estate of Lund,* 65 Cal.App.2d 151 [150 P.2d 211], an appeal was taken from an order under section 1020.1. The District Court of Appeal stated at page 153: "The anomalous nature of section 1020.1 is at once apparent. Prior to the enactment of said section and its forerunner, the probate court had no jurisdiction to determine the issue of the validity of an assignment upon the distribution of an estate. (*Estate of Howe,* 161 Cal. 152 [118 P. 515].) This section apparently attempted to give the probate court jurisdiction to determine that issue, at least for the purpose of distribution. It further attempted to give the probate court jurisdiction, assuming the validity of the assignment, to determine the question of the reasonableness of the compensation, at least for the purpose of distribution. We are not called upon here, however, to determine the numerous questions which may arise with respect to said section. Appellant invoked its provisions and respondent is not complaining of the decision of the probate court. In other words, neither party claims that the section is invalid." The court further stated at page 155: "It is elemental that the probate court is a court of special and limited jurisdiction and that it has jurisdiction only to the extent that the law prescribes. As we read section 1020.1 of the Probate Code, it does not purport to grant to the probate court general jurisdiction to 'set aside' an assignment in its entirety and for all purposes. It merely purports to grant to the probate court the limited jurisdiction, under certain circumstances, to ignore the assignment in whole or in part for the purposes of the distribution of the estate." In a later case, *Estate of Cazaurang,* 75 Cal.App.2d 217 [170 P.2d 694], the court held that on an appeal from an order under section 1020.1 it was unnecessary to determine the effect of the code section as it related to other matters. It was stated at page 224: "Whether the assignee might seek relief against the assignor in another independent action based upon the claimed assignment, if the probate court had refused to recognize the assignment at all and had refused to make distribution to the assignee but distributed the estate

directly to the devisee is not before us, and that question is not necessary to determine in this proceeding.''

Wiley points to certain cases, such as *Estate of Abdallah,* 80 Cal.App.2d 634 [182 P.2d 596], and *McCarthy* v. *Superior Court,* 64 Cal.App.2d 468 [149 P.2d 55], to support his contention that the court in a probate proceeding has no jurisdiction to enter an order under section 1020.1 which does more than temporarily allocate the funds in the estate for the purposes of distribution. These cases are not in point. They hold that where there is a dispute between an estate and a stranger to the estate, the court sitting in probate is not the proper forum to try the question of title. In this case the interpleaded money is part of the estate. Wiley's claim is based upon the fact that the money belongs to the heirs, and that as their assignee he is entitled to a portion thereof through the heirs.

In *Estate of Stanley,* 34 Cal.2d 311 [209 P.2d 941], the two heirs entered into an agreement concerning the distribution of the estate. One of them sought to avoid the agreement and to secure a different measure of distribution. The validity and effectiveness of the agreement was inquired into by the court sitting in probate under section 1020.1. The court upheld the validity of the agreement and framed the final decree of distribution in accordance therewith. This court affirmed the decree of distribution ordered by the trial court. It was stated at page 319: ''The clear implication from the foregoing [discussion concerning the effect of section 1020.1] is that a probate court may determine the validity of an agreement that property shall be distributed in a certain manner. . . . It must be remembered that a probate court has jurisdiction to determine rights under contracts ancillary to the exercise of its probate jurisdiction. (*Bennett* v. *Forrest,* 24 Cal.2d 485 [150 P.2d 416]; *Dobbins* v. *Title Guar. & Trust Co.,* 22 Cal.2d 64 [136 P.2d 572].) And, as is said in *Estate of Cover,* 188 Cal. 133, 139 [204 P. 583], quoting from *Estate of Warner,* 6 Cal.App. 361 [92 P. 191]: 'The superior court, while sitting in matters of probate, is the same as it is while sitting in equity, in cases at law, or in a special proceeding, and when it has jurisdiction of the subject matter of a case falling within either of these classes, it has power to hear and determine, in the mode provided by law, all questions of law and fact, the determination of which is ancillary to a proper judgment in such case. This is an incidental power pertaining ''to all courts for the purpose of

enabling them to exercise the jurisdiction which is conferred upon them." ' "

The reasoning in the Stanley case appears to be applicable to the case at bar. (*Cf. Hough* v. *Hough,* 26 Cal.2d 605, 616 [160 P.2d 15].) ▮ It may here be noted that while some judicial opinions refer in terms to a "probate court," strictly speaking, no probate court, as such, has existed in California since the adoption of the 1879 Constitution. It is the superior court exercising probate jurisdiction. (*Schlyen* v. *Schlyen, ante,* p. 361 [273 P.2d 897].) In an action involving a determination pursuant to the provisions of section 1020.1 the superior court, sitting in probate, is called upon to exercise a power specifically conferred upon it by statute in connection with the proper distribution of the estate. ▮ There can be no question but that the Legislature may constitutionally enlarge the power of the superior court sitting in probate to determine questions arising under section 1020.1. ▮ It seems unreasonable to assume, as Wiley contends, that the Legislature intended that the superior court sitting in probate should make a determination under section 1020.1 of the rights of the parties, but that this determination should have no effect, as between the same parties, outside of the probate proceeding and that the matter could again be litigated before the same court in another proceeding. It is therefore concluded that an order under section 1020.1 which has become final is binding upon the parties in all further actions.

The constitutional question presented by Wiley seems to be that the enactment of section 1020.1 has, if applied to his situation, interfered with and has impaired the constitutional rights and privileges granted to him under the state and federal Constitutions.

▮ It should be noted that the assignment involved in this case was entered into long after the enactment of section 1020.1, and we are not confronted with an attempt to apply the terms of a new law to an existing contract. It is well settled that under these circumstances the assignment contract was entered into in contemplation of the terms of the code section. In other words the statute was a part of the contract for the benefit of those coming within its terms. (*Home Bldg. & Loan Assn.* v. *Blaisdell,* 290 U.S. 398, 435, 436 [54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481]; *In re Maier Brewing Co.,* 38 F.Supp. 806, 818; *Castleman* v. *Scudder,* 81 Cal.App.2d 737, 740 [185 P.2d 35].) Here,

those for whom protection of the statute was intended were the heirs of the estate seeking distribution thereof as against the claim of another seeking a share in the estate.

Wiley concedes that a court having equity jurisdiction could set aside entirely an assignment or agreement procured by fraud or undue influence. He contends, however, that by permitting the court in a section 1020.1 proceeding to refuse to recognize an assignment or agreement because it is grossly unreasonable and to make an order in connection therewith which is just and equitable, is to have the court make a new contract for the parties contrary to the general law of contracts, thereby interfering with his right to contract.

It has been held: "The right to contract is not absolute and unqualified, and reasonable restrictions are not prohibited by the constitutional provisions." (*Lockheed Aircraft Corp.* v. *Superior Court*, 28 Cal.2d 481, 486 [171 P.2d 21, 166 A.L.R. 701].) It is not necessary to go further than to point to the usury statutes of this and other jurisdictions to find support for the proposition that in certain classes of contracts, agreements, and assignments, the Legislature may regulate the value of the consideration.

Probate Code, section 1020.1, is a statute of general applicability. (*Estate of Butler*, 29 Cal.2d 644, 653 [177 P.2d 16, 171 A.L.R. 343].) Under it the court is empowered to look to the value of the consideration in determining whether the agreement or assignment is grossly unreasonable.

The effect of a determination under section 1020.1 that an assignment or agreement is grossly unreasonable is to set aside that portion thereof found to be grossly unreasonable. In *Estate of Larson*, 92 Cal.App.2d 267, it was stated at page 273 [206 P.2d 852] : "Where the consideration is 'grossly unreasonable,' the burden is upon the heir hunter [or other assignee] to prove their real value." (See also *Estate of O'Donnell*, 85 Cal.App.2d 1, 12 [192 P.2d 94] ; *Estate of Reilly*, 81 Cal.App.2d 564, 569 [184 P.2d 922].)

The rights of heirs or legatees can never be fully established until the death of the person from whom they take. Often, there is a period before the heir learns of the death of the person from whom he will take, and, often, the rights of an heir or legatee cannot be fully established until probate. In dealing with the problem here involved the Legislature could consider that because of the situation of the parties it is possible to take unfair advantage of them and that assignments are often secured from them by which

large portions of their shares in the estate are surrendered in consideration for information which would have come to their attention in the normal course of events and which was of only nominal value.

It is concluded that contracts or agreements involving the assignment by an heir or legatee of his interest in the estate prior to distribution are of such a character that legislation may be enacted permitting the courts to inquire into the value of the consideration given.

Wiley next contends that section 1020.1 is unconstitutional because it is too indefinite in that the words "grossly unreasonable" therein contained are not defined. He argues that those words are so indefinite as to make the application of the statute in violation of due process. Questions of negligence, unreasonable restraint of trade, probable cause, reasonable doubt, and preponderance of evidence and the like are usually questions of fact. The term "grossly unreasonable" would seem to fall within the same category, and as here applied presents a question of fact. The section is therefore not so indefinite as to make its application a violation of due process. (*In re Leach,* 215 Cal. 536 [12 P.2d 3]; *Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668 [8 P.2d 140, 80 A.L.R. 1217]; *People* v. *Associated Oil Co.,* 211 Cal. 93 [294 P. 717]; *Mitchell* v. *Morris,* 94 Cal.App.2d 446 [210 P.2d 857].)

Wiley raises questions concerning the right to a jury trial in the prior proceeding under section 1020.1. They were properly determinable in that proceeding and are now foreclosed.

The proceedings in the Superior Court in and for the County of Napa fully determined the rights of Wiley and also of the heirs. Those proceedings have become final. The trial court properly sustained the defense of res judicata.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied February 24, 1955.