[Civ. No. 28631.   Second Dist., Div. Two.   Dec. 1, 1965.]

Estate of LEWIS R. FREEMAN, Deceased.   KATHERINE M. FREEMAN, Petitioner and Respondent, v. MARGARET DOOLITTLE TRAYLOR et al., Claimants and Appellants.

Richmond & Smith and Delmas R. Richmond for Claimants and Appellants.

Holmes, Ross, Woodson, Millard & Ryburn, Kenneth A. Millard and John W. Holmes for Petitioner and Respondent.

FLEMING, J.—Appeal from an order determining distribution rights to an estate and modifying an agreement between claimants. (Prob. Code, § 1020.1.)

Lewis R. Freeman died in November 1960, leaving an estate of $350,000 in securities and a will of 27 paragraphs. Paragraph 1 directed payment of his debts. Paragraphs 2 to 22 contained separate bequests to 27 individuals of personal effects or legacies in amounts up to $5,000. Paragraph 23 gave the residue of the estate to a friend, Donald A. McGilvray. Paragraphs 24 to 27 nominated an executor and provided for administration of the estate. McGilvray, the residuary legatee, died before the testator, and the will contained no specific provision for an alternate residuary legatee. Freeman's sole heir-at-law was his niece, Katherine Freeman, the respondent.

In probate proceedings, the successors in interest of McGilvray, the predeceased residuary legatee, claimed the residuary estate. So did the successors in interest of Maebelle D. Traylor, a surviving legatee named in paragraph 2 of the will, which read: "SECOND: I give and bequeath to MAEBELLE D. TRAYLOR, of Palm Springs, California, all of my books, curios, tennis prizes and other personal property and effects not otherwise disposed of in this Will." The theory of the Traylor claimants was that the gift of the residue to McGilvray had lapsed, and consequently the residue

of the estate (consisting of securities) became personal property not otherwise disposed of in the will, which under paragraph 2 passed to Maebelle D. Traylor.

In September 1961 the executor petitioned for distribution of the residuary estate to Katherine Freeman as sole heir. Objections to the petition for distribution were filed by the McGilvray claimants as successors to the residuary legatee named in the will, and by the Traylor claimants, as successors to the legatee named in paragraph 2 of the will.

On June 21, 1962, Katherine Freeman, on the advice of counsel, made an out-of-court agreement with the Traylor claimants to share their several interests in the estate, 40 per cent to Miss Freeman, and 60 per cent to the Traylors.

In July 1962 the probate court filed its memorandum opinion determining that the McGilvray legacy had lapsed and that the Traylor legacy covered only tangible personal effects and not intangible securities. The court recognized Katherine Freeman as sole heir to the residue of the estate and ordered preliminary distribution.

In November 1963 Miss Freeman filed a motion under Probate Code, section 1020.1, to set aside the agreement of June 21, 1962, on the ground that it had been procured under duress and on the further ground that it had been entered into for a grossly unreasonable consideration. After hearing evidence for three days, the probate court found in favor of Miss Freeman on both grounds. The court refused distribution under the terms of the agreement, and determined that just and equitable terms for distribution were 80 per cent of the residuary estate to Katherine Freeman and 20 per cent to the Traylor claimants.

The Traylors have appealed this order, challenging the finding of duress and the finding of grossly unreasonable consideration. We deem it unnecessary to review the finding of duress, since in our view the evidence of grossly unreasonable consideration fully supported the order of the probate court. (*Estate of Simmons,* 217 Cal.App.2d 580, 587 [31 Cal. Rptr. 861].)

In analyzing sufficiency of consideration we must keep in mind the difference between the value of consideration required to enforce a promise in an ordinary agreement and the value required to uphold a settlement of conflicting claims to an estate against an attack under Probate Code, section 1020.1. ■ In the usual agreement, particularly when the parties are represented by counsel, a court will not

weigh the sufficiency of the consideration for a promise once it has found it to be of some value. (*Blocksidge* v. *Broadway Sixth Co.*, 207 Cal.App.2d 628, 632 [24 Cal.Rptr. 622]; Civ. Code, § 1605.) Generally, some value means any value whatever, even that of a peppercorn, a tomtit, or one dollar in hand. ▆ But in certain kinds of agreements the courts have been given the power to consider relative values in weighing the sufficiency of consideration. These include usurious agreements, conveyances by insolvent debtors, contracts to convey specific real property, and, our concern here, agreements involving the rights of heirs, devisees, and legatees.

Probate Code, section 1020.1, provides specific judicial review over the merits of settlements between claimants to estates.[1] A long history of overreaching in this field finally induced the Legislature to place this area of private agreement under direct judicial supervision and empower the probate court to set aside agreements for the transfer of interests in estates in their entirety, or enforce them "upon such terms as it deems just and equitable." (*The Work of the 1941 Legislature*, 15 So.Cal.L.Rev. 469, 471-472.) Although the original legislation was primarily intended to provide supervision over assignments to heir hunters, the language of the statute gave the probate court broad powers to review the consideration for any agreement assigning an interest in an estate; and, in the practical operation of the law, these broad powers have become generally used to supervise all types of settlements in estates, including those among rival claimants and heirs. (*Estate of Simmons*, 217 Cal.App. 2d 580, 586 [31 Cal.Rptr. 861].) ▆ The probate court can set the entire agreement aside, or it can modify it to the

---

[1]Probate Code, section 1020.1: "The court before making distribution of any property of a decedent to any assignee or transferee of any heir, devisee or legatee or before making distribution to any person other than an heir, devisee or legatee pursuant to any agreement, request or instructions of any heir, devisee or legatee or of any attorney-in-fact of any heir, devisee or legatee may on the motion of any person interested in the estate or on the motion of the public administrator or on its own motion inquire into the consideration for such assignment, transfer, agreement, request or instructions and into the amount of any fees, charges, or consideration paid or agreed to be paid by the heir, devisee or legatee and into the circumstances surrounding the execution of such assignment, transfer, agreement, request or instructions and if it finds that the fees, charges or consideration paid by any such heir, devisee or legatee is grossly unreasonable or that any such assignment, transfer, agreement, request or instructions was obtained by duress, fraud or undue influence it may refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable. . . ."

extent it finds the consideration grossly unreasonable. (*Burchell* v. *Strube*, 43 Cal.2d 828, 836 [279 P.2d 1].)

■ Appellants argue that the compromise and release of a claim advanced in good faith is a good and valuable consideration which suffices to support a compromise agreement, even though later developments may prove the claim to have been ill-founded. (*Nesbitt Fruit Products, Inc.* v. *Del Monte Beverage Co.*, 177 Cal.App.2d 353, 361 [2 Cal.Rptr. 333].) This is a correct statement of the general rule of law which normally applies in the compromise of a tort claim or a commercial dispute. But in the compromise of a claim to an estate falling within the scope of Probate Code, section 1020.1, the usual rule has been modified by statute, and the court is specifically directed to inquire into the reasonableness of the consideration in the compromise—that is to say, value received, in relation to value given.

■ Examining the merits of the various claims to the residuary estate, we find that the McGilvray claim was without genuine substance, because the specific bequest of the residue to one not related to the testator clearly lapsed when McGilvray predeceased the testator. (Prob. Code, § 92.)

■ Accordingly, Miss Freeman, the testator's sole heir, became entitled to succeed to all the estate which would pass by intestate succession. On June 21, 1962, under her settlement with the Traylors, she gave up 60 per cent of her interest in the estate in return for 40 per cent of the Traylor's claim to personal property not otherwise disposed of in the will. In July 1962 Miss Freeman was found to be entitled to the entire residuary estate valued at $300,000. At the same time the probate court found that under paragraph 2 of the will the Traylors were entitled to nothing more than the testator's personal effects. This finding was based on the conclusion that the bequest of "books, curios, tennis prizes and other personal property and effects not otherwise disposed of" included only tangible personal property and did not include intangible personal property such as the securities in the estate. There is substantial evidence and case law to support this interpretation. (*Estate of Graham*, 49 Cal.2d 333 [316 P.2d 945]; *Estate of Nielsen*, 204 Cal.App.2d 357, 362-363 [22 Cal.Rptr. 260, 94 A.L.R.2d 1100].)

Hence, as the probate court later found, Miss Freeman, the sole heir to a residuary estate worth $300,000, relinquished 60 per cent of her inheritance to the Traylors in return for a minority interest in a nuisance-value claim. She gave up a share worth $180,000 in exchange for a share in a valueless

legacy. We think this peppercorn came at too high a price. We agree with the probate court that the consideration was grossly unreasonable within the meaning of Probate Code, section 1020.1. (*Estate of Simmons,* 217 Cal.App.2d 580, 587 [31 Cal.Rptr. 861] ; *Burchell* v. *Strube,* 43 Cal.2d 828, 836 [279 P.2d 1].)

The probate court, under its authority to set aside the grossly unreasonable portion of an agreement and refuse distribution of an estate except on just and equitable terms, approved a distribution of 80 per cent of the residue to Miss Freeman and 20 per cent to the Traylors. This order was within the court's authority and will not be disturbed. (*Estate of McPherson,* 94 Cal.App.2d 906, 909-910 [212 P.2d 41] ; *Estate of Simmons,* 217 Cal.App.2d 580, 585 [31 Cal. Rptr. 861].)

Order affirmed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied December 17, 1965, and appellants' petition for a hearing by the Supreme Court was denied January 26, 1966. Peek, J., did not participate therein.