108 Cal.Rptr.2d 572 (2001)
90 Cal.App.4th 228
ESTATE OF Edward Henry WRIGHT, Deceased.
Dorothy Ann Gunning, Petitioner and Appellant,
v.
Joseph S. Caudill, Objector and Respondent.
No. B145083.
Court of Appeal, Second District, Division Six.
June 26, 2001.
Review Denied September 12, 2001.
*574 Avansino, Melarkey, Knobel, & Mulligan, John B. Mulligan; Rutan & Tucker, Theodore I. Wallace, Jr., and Matthew K. Ross, Costa Mesa, for Petitioner and Appellant.
John E. Boessenecker, San Francisco, for Objector and Respondent.
*573 GILBERT, P.J.
An heir hunter locates a missing or lost heir. As consideration for information concerning the inheritance, the heir executes an assignment giving the heir hunter a percentage of the inheritance. She also signs, but later revokes, a general power of attorney in favor of the attorney who represents the heir hunter. She also refuses to sign a letter authorizing the attorney to represent her even though the heir hunter agreed to pay the attorney's fees.
We hold that under these circumstances, the heir hunter's assignment is valid. We also conclude that the general power of attorney in favor of the attorney contravenes public policy and is void.
Dorothy Ann Gunning appeals an order denying a petition to invalidate an assignment of her interest in the estate of Edward Henry Wright to an heir hunter, or alternatively, to limit the heir hunter's compensation. (Prob.Code, §§ 1303, subds.(g), (h), 11604; Estate of McPherson (1949) 90 Cal.App.2d 17, 20, 202 P.2d 565.)[1] We affirm.

FACTS
On July 5, 1999, Edward Henry Wright died intestate. Wright, a widower, had no children but three siblings survived him. Wright's brother resided in Florida, and a sister resided in North Carolina.
On August 9, 1999, attorney David Turpin filed a petition for letters of administration as the nominee of Wright's brother and sister. Turpin requested that the probate court fix a $300,000 bond, the estimated value of the estate.
In the petition for letters of administration, Turpin stated that the address of the decedent's second sister, Dorothy Ann Gunning, was "unknown" to her siblings. Turpin requested that the probate court authorize him to employ an heir hunter, Francis See, at an hourly rate to locate Gunning. Turpin stated that Gunning lived at times in Petaluma, California, Las Vegas, or Reno, Nevada, and Manchester, New Hampshire. The probate court approved *575 the petition and the employment of See at a $75 hourly rate, not to exceed $5,000.
The petition for letters of administration, the estimated value of the estate, and the statement that Gunning's whereabouts were unknown, did not escape the interest of heir hunters. David Franklin, a licensed private investigator specializing in heir hunting, soon learned of the petition for letters and the missing heir. Franklin's employees searched telephone listings and public records in California, Nevada, and New Hampshire for information regarding Gunning, without success.
On August 27, 1999, Franklin referred the search to Joseph S. Caudill, a licensed private investigator and heir hunter in Colorado. Caudill searched computer data bases for telephone listings, voter records, real property records, driving records, and social security death records. From this search, he found addresses for Gunning in Reno, Nevada. By telephone, Caudill spoke with landlords and neighbors at these addresses and obtained Gunning's social security number.
Caudill located Gunning's employer in Reno by using her social security number. He then arranged for Jonathan Lowden, an employee of a California licensed private investigator, to travel to Reno to find Gunning. Lowden visited Gunning's employer in Reno and learned that she had worked there recently. As Lowden spoke with persons outside a casino that Gunning frequented, she walked across the street.
According to Gunning, Lowden identified himself and informed her that she had inherited money but had to "sign the papers" to learn of the inheritance. Otherwise, he warned that she "might never find out where [her] inheritance came from and ... might lose a great sum of money ...."
Lowden declared that he informed Gunning that he could not disclose "the provenance of the [estate] funds" unless she signed an assignment in favor of heir hunter Caudill. Lowden declared that he also advised Gunning that it "was quite possible" that she could learn of the inheritance "some other way." According to Lowden, Gunning responded, in essence: "What the hell. Let's do it."
On September 10, 1999, Gunning executed an agreement and assignment giving Caudill 35 percent of her inheritance "in consideration of the information ... given [her] and for research done ..." regarding the inheritance. Gunning also executed a limited power of attorney in favor of Caudill "to order and receive any and all documentation relating to [her] identity or the identity of [her] parents."
In addition, Lowden presented Gunning with a general power of attorney in favor of a San Francisco attorney, John E. Boessenecker. The power of attorney authorized Boessenecker "to exercise or perform any act, power, duty, right or obligation whatsoever that [Gunning] now [has] or may hereafter acquire ...." It specifically included the right to order and receive documents concerning Gunning's identity or that of her parents, and the power to perform financial transactions and to accept and endorse bank drafts.
Lowden later gave Gunning an agreement authorizing Boessenecker to represent her. In part, the agreement provided: "I [Gunning] am informed that, insofar as there is no conflict of interest, and none arises, you [Boessenecker] are willing to represent me for the purpose of establishing and protecting my right to inherit from the ... estate and in obtaining distribution .... [¶] In the event a dispute arises over my relationship to the decedent, my right to inherit, ownership or title to property in the decedent's estate, or over any *576 other matter involving he estate, I authorize you to act and/or appear on my behalf in settling said dispute or adverse claims, providing that such action shall be without cost or any fees or expenses to me." The agreement provided that Caudill would pay all attorney's fees and that Gunning was "not to be obligated for any [attorney's] fees."
Although Gunning executed the general power of attorney in favor of Boessenecker, she refused to execute the agreement authorizing him to represent her in the probate, thereby revoking the power of attorney. Indeed, Gunning thereafter employed a Reno law firm to represent her. Boessenecker wrote Gunning and confirmed that he would "not be representing [her] any further and will not be taking any further action on [her] behalf."
Wright's heirs soon learned that his estate was worth approximately $1.39 million. Gunning then sought an order from the probate court invalidating her assignment to Caudill, or alternatively, limiting his compensation. (§ 11604, subds.(c)(1), (c)(2).) Among other things, she asserted that she was "66 years old, was down on her luck, had only five dollars to her name, was unemployed and was staying temporarily at a friend's apartment" when Lowden asked her to execute the agreement and assignment and powers of attorney. She insisted that she had contacted family members over the years and was not a missing or lost heir. Gunning argued that the assignment was induced by fraud and moreover, neither Caudill nor Lowden possessed a California private investigator's license. (Bus. & Prof.Code, § 143, subd. (a).)
The probate court concluded that the assignment was not induced by fraud, undue influence, or duress. The court characterized the assignment as "a legitimate business transaction, authorized by statute." It rejected Gunning's arguments and refused to invalidate the assignment or to reduce Caudill's compensation.
Gunning appeals and challenges the agreement and assignment to Caudill on public policy and statutory grounds.

DISCUSSION

I.
Gunning argues that the agreement and assignment is void because Caudill engaged in the unlawful practice of law and the solicitation of clients for an attorney. (Estate of Butler (1947) 29 Cal.2d 644, 647, 177 P.2d 16 [contacting heirs, securing their authorization to appear for them, and employing counsel to represent them is "commercial exploitation" of the legal profession and contrary to public policy]; 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 412, p. 503["[W]hen the [heir hunting] business involves solicitation of contracts with heirs to furnish counsel and prosecute their claims, it constitutes illegal practice of law."].) She points out that it is unlawful to solicit business for an attorney or to practice "ambulance chasing." (Bus. & Prof.Code, § 6152, subd. (a)(1) [unlawful for person to act as a "runner or capper" or to solicit business for an attorney]; Estate of Butler, supra, 29 Cal.2d 644, 648, 177 P.2d 16; Rules of Prof. Conduct, rule 1-400 [prohibiting solicitation of clients with whom attorney has no family or prior professional relationship].)
Section 11604 permits the probate court, in its discretion, to invalidate the assignment of an estate interest or to determine that consideration for the assignment is unreasonable. (Subds.(c)(1), (c)(2); Estate of Butler, supra, 29 Cal.2d 644, 653, 177 P.2d 16 [predecessor statute to § 11604]; Estate of Freeman (1965) 238 Cal.App.2d 486, 489, 48 Cal.Rptr. 1 [same].) Section 11604 and its predecessor *577 statutes were enacted, in part, to provide judicial supervision of assignments given to heir hunters. (Estate of Freeman, supra, 238 Cal.App.2d 486, 489, 48 Cal.Rptr. 1.)
Our Supreme Court has considered powers of attorney and assignments of interests given to heir hunters who thereafter control the probate litigation. Estate of Butler, supra, 29 Cal.2d 644, 177 P.2d 16, involved an heir hunter who obtained powers of attorney and assignments from estate beneficiaries living in Ireland. The documents allowed the heir hunter to manage the probate proceedings on behalf of the beneficiaries, including employment of attorneys. (Id., at p. 650, 177 P.2d 16.) The powers of attorney provided: "`[The heir hunter is empowered] to represent [the beneficiaries] in all proceedings whatsoever in the matter of the estate ... and particularly ... to petition for letters of administration or letters testamentary, to recognize, defend or contest wills ... to institute, prosecute or defend suits and proceedings in law, equity or in probate, in any court or courts, to enter our and each of our appearances therein (Ibid.)
Our Supreme Court invalidated the assignments because the powers of attorney set forth undertakings that constitute the unlawful practice of law. (Estate of Butler, supra, 29 Cal.2d 644, 652, 177 P.2d 16 [pursuant to assignments and powers of attorney, heir hunter furnished legal services for his principals and paid attorney's fees and court costs from his compensation].) Butler held: "[A]s a nonlawyer acting for prospective beneficiaries under agreements providing for his paying `[expenses incurred pursuant to the power of attorney, attorney's fees, and court costs],' [the heir hunter] assumes complete control of the litigation instituted on behalf of the beneficiaries through attorneys hired by him and becomes a `middleman' intervening for profit in the conduct of legal proceedings. Such procedure amounts to `commercial exploitation' of the legal profession and is contrary to public policy." (Id., at p. 647, 177 P.2d 16.)
Standing alone, the agreement and assignment and the power of attorney in favor of heir hunter Caudill are not objectionable. Unlike the power of attorney in Butler, the power of attorney obtained by Caudill was limited to "order and receive any and all documentation relating to [Gunning's] identity or the identity of [Gunning's] parents." It does not implicate the public policy against an unlicensed person furnishing legal services for his principal. (Estate of Butler, supra, 29 Cal.2d 644, 647, 652, 177 P.2d 16; Estate of Larson (1949) 92 Cal.App.2d 267, 273, 206 P.2d 852.) The agreement and assignment and the power of attorney did not empower Caudill to represent Gunning or to control the probate litigation.
The general power of attorney in favor of attorney Boessenecker is another matter. The express power to order and receive documents relating to Gunning's identity or that of her parents and to perform financial transactions is innocuous. The general power "to exercise or perform any act, power, duty, right or obligation whatsoever that [Gunning] now ha[s] or may hereafter acquire," however, brings the matter within the Butler rule. Caudill's practice of retaining his own counsel who represents the heirs at no cost to them contravenes public policy. (Estate of Larson, supra, 92 Cal.App.2d 267, 273, 206 P.2d 852 ["The fact that the [heir hunter's] agreement may be to employ counsel and not to act himself as a lawyer does not take the case out of the [Butler] rule."].) Indirectly, Caudill has performed acts condemned by Butler. (Estate of Butler, supra, 29 Cal.2d 644, 647, 177 P.2d 16.) Caudill may not be an unauthorized *578 person practicing law, but in essence, he has solicited business for an attorney in violation of Business and Professions Code section 6152.
Moreover, the power of attorney in favor of Boessenecker presents him with an insurmountable conflict of interest. (Rules of Prof. Conduct, rule 3-310 [avoiding representation of adverse interests]; Gilbert v. National Corp. for Housing Partnerships (1999) 71 Cal.App.4th 1240, 1253, 84 Cal.Rptr.2d 204 [general discussion of attorney's representation of adverse interests].) The interests of Gunning and Caudill are adverse, for example, concerning the reasonableness of the heir-hunting fee. The attorney representing the heir hunter cannot advise the estate beneficiary that the heir hunter's assignment is suspect or unreasonable. Such professional representation could have discouraged Gunning from obtaining independent counsel and could have insulated Caudill's fee from challenge.
In Estate of Lynch (1978) 83 Cal.App.3d 296, 305-307, 147 Cal.Rptr. 861, Justice Kaus, in a dissenting opinion, described an heir-hunter's assignment and retention of an attorney who would also represent the heirs, as a "highly questionable practice." (Id., at p. 305, 147 Cal.Rptr. 861.) "It is clearly misleading, in that it implies a mutuality of interest between assignee and heir which does not, in fact exist. First, I very much doubt whether the attorney picked by the assignee considered it part of his duty to the heir to explain that he could attack the assignment under [Probate Code] section 1020.1 [predecessor to section 11604]. Second, even if the assignor's and the assignee's interests coincide as to the total amount which the heir is to receive from the estate, the heir may have problems of timing, taxes, nature of interest and so forth about which the assignee could not care less and which, to avoid delay, he does not want raised. Finally there may be conflicts as to specific properties between two or more of the heirs whom the assignee has signed up for one third each." (Id., at p. 306, 147 Cal.Rptr. 861.)
The result here may have been different had the heir hunter succeeded in inducing Gunning to employ Boessenecker as her attorney. In such event, all the documents may have been so inextricably tied to one other that the taint of Boessencker's power of attorney may have rendered them all void for reasons of public policy. But Gunning revoked the power of attorney and employed independent counsel. The situation thus differs from Butler and does not require invalidation of the assignment.
Although we share Gunning's concerns with "overreaching" by heir hunters, it is not our province to regulate the business. (Estate of Freeman, supra, 238 Cal.App.2d 486, 489, 48 Cal.Rptr. 1 [Legislature enacted § 11604 and earlier statutes to correct "[a] long history of overreaching" by heir hunters and other claimants to estate].) Gunning's remedies lie with the Legislature. We conclude that the public policy concerns of Butler are not present here.

II.
Gunning contends that Caudill cannot enforce the assignment because he is not a licensed private investigator in California. (Bus. & Prof. Code, § 7523, subd. (a) ["Unless specifically exempted by [Bus. & Prof.Code] Section 7522, no person shall be engaged in the business of private investigator ... unless that person has applied for and received a license to engage in that business ...."].) She points out that Business and Professions Code section 7521 defines a private investigator as one who "engages in business or *579 accepts employment to furnish, or agrees to make or makes, any investigation for the purpose of obtaining, information with reference to: [¶] ... [¶] (b) The identity, ... [or] whereabouts ... of any person." Gunning claims that Business and Professions Code section 143, subdivision (a), precludes Caudill from recovering "compensation for the performance of any act or contract for which a license is required." She relies upon Landi v. Arkules (1992) 172 Ariz. 126, 835 P.2d 458, holding that an unlicensed heir hunter may not recover under an heir finder agreement with a missing heir.
Gunning does not cite California authority concluding that an heir hunter must be a licensed private investigator to recover under an assignment or agreement with a missing heir. We have not found any California authority so concluding.
Under the circumstances here, the law does not require that Caudill be licensed in California to recover under the assignment. Franklin, a California licensed private investigator and heir hunter, learned of the Wright estate and the missing heir. After performing a fruitless search for Gunning's whereabouts, he referred the search to Caudill. Caudill searched data bases and made inquiries from Colorado. He did not perform his search in California and he did not meet with Gunning in Nevada.
Landi v. Arkules, supra, 172 Ariz. 126, 835 P.2d 458, involved a search in Arizona and New York by an unlicensed private investigator. The decedent died in Arizona, the investigator learned of possible missing heirs when he was "randomly reviewing probate files," and he located three possible heirs in Arizona. (Id., at p. 460.) The investigator then found another heir in New York. Landi concluded that the agreement that the investigator made with the New York heir was unenforceable, in part, because the investigator was not licensed in Arizona. (Id., at p. 467.) Thus, circumstances in Landi differ from the circumstances here and for that reason, the decision is not persuasive.

III.
Gunning argues that the assignment is unenforceable because Caudill obtained it by "duress, fraud, or undue influence." (§ 11604, subd. (c)(2) [court may refuse distribution to assignee or order it on just and equitable terms if transfer by beneficiary was obtained by duress, fraud, or undue influence].) She claims that Lowden falsely informed her that she might not learn of her inheritance unless she signed the assignment and powers of attorney. Gunning adds that Caudill and Lowden did not apprise her that the estate had employed another heir hunter on an hourly basis to find her.
In reviewing an order under section 11604, subdivision (c)(2), we view the evidence most favorably to the order to determine whether sufficient evidence supports it. (Estate of Raphael (1951) 103 Cal.App.2d 792, 795, 230 P.2d 436.) We do not substitute our judgment for that of the probate court regarding "the weight and effect of the evidence." (Ibid.; Estate of Simmons (1963) 217 Cal.App.2d 580, 585, 31 Cal.Rptr. 861.)
Sufficient evidence supports the order. The probate court received conflicting declarations concerning the statements that Lowden made to Gunning when he presented her with the assignment and powers of attorney. Viewing the evidence most favorably to the order, Lowden stated that he would not tell Gunning the source of her inheritance unless she signed an assignment and powers of attorney. He conceded that "it was quite possible" that she could learn of the inheritance in *580 some other manner, but "there were no guarantees." Lowden offered Gunning time to consider the matter and gave her his cell phone number. Gunning responded along the lines of, "What the Hell. Let's do it." Lowden's statements are either true statements or opinions and do not constitute fraud. (Borba v. Thomas (1977) 70 Cal.App.3d 144, 152, 138 Cal.Rptr. 565 [general rule that misrepresentation must concern past or existing facts and not predictions].) Moreover, sufficient evidence supports the ruling that Gunning was not subject to duress or undue influence.

IV.
Gunning asserts that the probate court erred by not reducing the distribution to Caudill because the consideration was "grossly unreasonable." (§ 11604, subd. (c)(1).) She argues that she was not a missing or lost heir, that she contacted her siblings and sons from time to time, and that the heir hunter employed by the estate administrator, Francis See, was close to finding her. Gunning also points out that a $122,000 distribution to Caudill is disproportionate to the $5,000 payment that the probate court authorized to See. She adds that section 11604 permits the probate court to examine closely the fairness of consideration"value received, in relation to the value given." (Estate of Boyd (1979) 98 Cal.App.3d 125, 131, 159 Cal.Rptr. 298 [under § 11604 court may give more scrutiny to fairness of consideration than it would in cases of ordinary contract].)
Section 11604, subdivision (c)(1), provides that the probate court "may order ... just and equitable" terms if the court finds that "[t]he fees, charges, or consideration paid or agreed to be paid by a beneficiary are grossly unreasonable." The statute allows the court discretion to refuse a distribution or to modify it. (Estate of Peterson (1968) 259 Cal.App.2d 492, 506, 66 Cal.Rptr. 629.) In proceedings under section 11604, the heir hunter bears the burden of establishing the adequacy of consideration for the assignment. (Estate of Larson, supra, 92 Cal.App.2d 267, 273, 206 P.2d 852.)
The trial court did not abuse its discretion. When attorney Turpin filed a petition for letters of administration, he advised the probate court that Gunning's whereabouts were unknown to her sister and brother. Turpin requested authorization to employ an heir hunter to find Gunning.
Caudill declared that he and an employee spent approximately 150 hours searching data bases and interviewing leads. Lowden searched for Gunning in Reno for two days. The court was free to believe the declarations of Caudill, Lowden, and Franklin, and disbelieve the declarations of Gunning and her sister. (Brunzell Construction Co., Inc. v. Smith (1988) 200 Cal.App.3d 617, 620, 246 Cal.Rptr. 182.) We do not redetermine matters of credibility. (Ibid.)
Heir hunter Franklin testified that heir hunting was competitive and that he worked at times within "minutes, if not seconds" of other heir hunters. Franklin stated that as few as two of a hundred searches resulted in remuneration. In view of the evidence that Gunning's whereabouts were unknown and the amount of effort of Caudill and his employees, the court did not abuse its discretion.
The order is affirmed. Parties to bear their own costs on appeal.
COFFEE, J, and PERREN, J, concur.
NOTES
[1] All statutory references are to the Probate Code unless stated otherwise.