Filed 10/13/22  Estate of Williams CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| Estate of TOULONNE WILLIAMS, Deceased. | B314694 |
| ZACHARIE DEJOHNETTE, as Administrator, Petitioner and Appellant, v. LINZA WILLIAMS, Respondent. | (Los Angeles County Super. Ct. No. 19STPB00026) |

APPEAL from an order of the Superior Court of Los Angeles County, Gus T. May, Judge.  Affirmed.

Lisa M. MacCarley for Petitioner and Appellant.

No appearance by Respondent.

# INTRODUCTION

Zacharie DeJohnette, the administrator of the estate of Toulonne Williams (the Estate), appeals from an order denying his petition for approval of a settlement agreement and for final distribution. DeJohnette, who is Toulonne's son and a beneficiary of the Estate, sought an order distributing the Estate's only asset, a house, to himself and a granddaughter of Toulonne's, and omitting Toulonne's surviving spouse (who died during the administration of the estate) from the distribution. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

### A. *Toulonne Dies Intestate*

Toulonne died intestate in September 2018. She left three heirs: her husband, Linza Williams Jr.; her son, DeJohnette; and a granddaughter, Paulana-Viviana (the daughter of Toulonne's predeceased son). Under the intestacy provisions of the Probate Code, Linza Jr., as Toulonne's surviving spouse, was to receive one-third of the separate property of the Estate,[1] as well as Toulonne's share of the community property (in addition to his share). The probate court appointed DeJohnette administrator of the Estate.

The Estate's only asset is a house in Pasadena, which is encumbered by a deed of trust securing a promissory note. When Toulonne died, Linza Jr. filed several petitions against the estate, including a petition to set apart the Pasadena house as a

---

[1] See Probate Code sections 100, 240, 6401, 6402. Statutory references are to the Probate Code.

homestead. In addition, Linza Jr.'s son, Linza III, moved into the house, but did not pay rent to the Estate or his father. DeJohnette later filed an unlawful detainer action against Linza III to remove him from the house.

B. *Linza Jr. Dies, and DeJohnette Files a Petition for Approval of a Settlement and for Final Distribution of Toulonne's Estate*

Linza Jr. died in August 2019. DeJohnette and Linza III later reached a settlement in which DeJohnette agreed to pay Linza III $30,000 from the Estate and to release any claims he (DeJohnette) had against Linza III. In exchange, Linza III purported to agree to release any claims his father Linza Jr. had against the Estate and to disclaim Linza Jr.'s interest in the Estate. DeJohnette filed a petition for approval of the settlement and for final distribution after waiver of accounting. DeJohnette sought an order distributing the Pasadena house, subject to the promissory note and deed of trust, to him and his niece, Paulana-Viviana. The estate did not have any other remaining debts or liabilities.

Linza Jr. had another surviving child—a daughter named Lisa, Linza III's sister. In support of the petition, DeJohnette stated that he and his attorney did their "best to notify Lisa . . . of the proceedings and contact her to negotiate a settlement," but that Linza III "adamantly" refused to provide Lisa's contact information. At the time DeJohnette filed the petition for final distribution, no one had initiated probate proceedings for Linza Jr.'s estate.

3

C.     *The Probate Court Denies the Petition*

The probate court denied the petition for three reasons. First, the court ruled the appointment of an administrator for Linza Jr.'s estate was required to represent Linza Jr.'s interest in the Estate.  Second, the court ruled DeJohnette failed to provide adequate notice to Lisa, whose interests were "affect[ed]" by the proposed settlement.  Finally, the court ruled the distribution under the proposed settlement was inappropriate because the Pasadena house "appeared to be community property with Linza [Jr.]."  DeJohnette timely appealed from the order denying the petition.[2]

**DISCUSSION**

A.     *Legal Standard*

"The probate court or judge is the guardian of estates of deceased persons and all proceedings are under the direction of the judge." (*County of Los Angeles v. Morrison* (1940) 15 Cal.2d 368, 371; see *Estate of Sapp* (2019) 36 Cal.App.5th 86, 102.)  The court must approve any compromise or settlement that affects "[a]n interest in real property" (§ 9832, subd. (a)(2)) or that affects the transfer of estate property exceeding $25,000 (§ 9833). DeJohnette's proposed settlement with Linza III, under which DeJohnette agreed to pay Linza III $30,000 from the Estate in exchange for Linza III disclaiming Linza Jr's interest in the Estate (including Linza Jr.'s interest in the Pasadena house), affected both an interest in real property and a transfer of real

---

[2]     A probate court's "refusal to grant" an order "[d]irecting distribution of property" is appealable.  (§ 1303, subd. (g).)

4

property exceeding $25,000.  In addition, the court must approve final distribution of an estate.  (See §§ 10951, 11603.)

We review an order on a petition for approval of a settlement and an order on a petition for final distribution for abuse of discretion.  (See *Breslin v. Breslin* (2021) 62 Cal.App.5th 801, 806 ["the standard of review for the probate court's approval of a settlement is abuse of discretion"]; *Estate of Lock* (1981) 122 Cal.App.3d 892, 902 ["In ruling upon a petition for settlement of an executor's account or final distribution of an estate, the probate court is vested with broad jurisdiction which will not be disturbed on appeal except when abused."]; *Estate of Green* (1956) 145 Cal.App.2d 25, 28 [same].)  "'"[W]e will only interfere with [the probate court's] ruling if we find that under all the evidence, viewed most favorably in support of the [probate] court's action, no judge reasonably could have reached the challenged result."'" (*Estate of Sapp, supra*, 36 Cal.App.5th at p. 104; see *Estate of Hammer* (1993) 19 Cal.App.4th 1621, 1634.)

    B.    *The Court Did Not Abuse Its Discretion*

The probate court did not abuse its discretion in denying DeJohnette's petition.  First, neither Linza Jr., a personal representative of Linza Jr.'s estate, nor anyone else authorized by the Probate Code to receive Linza Jr.'s share of Toulonne's estate, agreed to the proposed settlement.  Second, DeJohnette did not give Lisa adequate notice of the hearing on the proposed settlement and final distribution.  Finally, DeJohnette did not show that the Pasadena house was in fact Toulonne's separate property, rather than community property, and that therefore it could be included in an order distributing the Estate's assets.  Here's more on these reasons:

1. *Neither Linza Jr. nor His Personal Representative Agreed to the Proposed Settlement*

DeJohnette contends the probate court erred in declining to approve the settlement and final distribution because no one objected. For DeJohnette, it was enough that he and Paulana-Viviana, two of Toulonne's three heirs, and Linza III, a child of the remaining, deceased heir, agreed to the settlement. It doesn't work that way.

DeJohnette, as the administrator of the Estate, "occupies a fiduciary relationship in respect to all parties having an interest in the estate including heirs, . . . and, as a fiduciary, has the duty towards such parties to protect their legal rights in the estate." (*Nathanson v. Superior Court* (1974) 12 Cal.3d 355, 364-365; see *Estate of Sapp*, *supra*, 36 Cal.App.5th at p. 102; *Hecht v. Superior Court* (1993) 16 Cal.App.4th 836, 845.) This fiduciary duty requires the administrator, among other things, to "'distribute the residue of the property to those entitled to receive it.'" (*Sapp*, at p. 102; see *Estate of Bonanno* (2008) 165 Cal.App.4th 7, 17-18.) The probate court has a similar responsibility "to protect the estate and ensure its assets are properly protected for the beneficiaries" (*Estate of Ferber* (1998) 66 Cal.App.4th 244, 253) and has inherent equitable power to "'intervene to prevent or rectify abuses of [an administrator's] powers.'" (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427.) As the Supreme Court has explained: "[J]ustice and sound policy require that the estates of decedents be distributed to persons rightfully entitled thereto and every concern and endeavor of a probate court should be to the accomplishment of that purpose."

(*Edlund v. Superior Court* (1930) 209 Cal. 690, 695; see *Estate of Kraus* (2010) 184 Cal.App.4th 103, 114.)

Beneficiaries who die during the administration of the proceeding retain their interest in their share of the estate. (See § 11801, subd. (a) ["the share in a decedent's estate of a beneficiary who survives the decedent but who dies before distribution shall be distributed under this chapter with the same effect as though the distribution were made to the beneficiary while living"]; *Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1133 [Probate Code does not "require that [a beneficiary] survive the distribution of [the decedent]'s estate in order to receive the residue of the estate"]; *Estate of McGuigan* (2000) 83 Cal.App.4th 639, 653 fn. 11 ["heirs are entitled to their share of the decedent's estate even if they die prior to distribution of the estate"].) Thus, the probate court's duty to ensure all estate beneficiaries received the distributions to which they were entitled required the court to ensure Linza Jr. (or his estate, after he died), like the living beneficiaries, received the distribution to which he was (and his estate now is) entitled.

Here, the proposed settlement would have cut Linza Jr.'s estate out of the distribution of Toulonne's estate. As DeJohnette stated in his petition for approval, the proposed settlement would have resolved Linza Jr.'s entire "interest in the estate," including potential "reimbursement" claims by Linza Jr. against the estate. Linza Jr., however, did not agree to the settlement, nor did anyone who could resolve his claims on behalf of his estate.

True, Linza Jr.'s son, Linza III, agreed to the settlement. But the Probate Code does not permit DeJohnette, as administrator of Toulonne's estate with a fiduciary duty to each of the estate's beneficiaries (including deceased beneficiaries), to

7

omit Linza Jr. or his estate from the distribution by making a deal with one of his children. As the Probate Code makes clear, where an adult beneficiary dies during the administration of the estate, "the beneficiary's share in the decedent's estate shall be distributed" in one of two ways: "to the personal representative of the estate of the beneficiary for the purpose of administration in the estate of the beneficiary" (§ 11802, subd. (a)) or to the persons "entitled to the beneficiary's share" *if* that person proceeds under Division 8 of the Probate Code, which governs disposition of an estate without administration (§ 11802, subd. (b); see § 13000 et seq.). Linza III was neither.[3] Moreover, section 11802 guarantees the distribution to a deceased beneficiary will pass to the beneficiary's rightful heirs or successors. (See *Estate of McGuigan, supra,* 83 Cal.App.4th at p. 653 fn. 11 [generally "the administrator of the [deceased beneficiary's] estate 'stands in the shoes of'" the beneficiary]; *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1062 ["An executor or trustee of an estate is the real party in interest for purposes of bringing a claim on behalf of those estates."]; see also § 13101 [to obtain a decedent's interest in property under Division 8, the successor of the

---

[3] The settlement agreement recites that Linza Jr. executed a trust and pour-over will that "nominate[d] Linza III as his personal representative." As DeJohnette concedes, however, no one has filed a petition for administration of, and Linza III has not been appointed personal representative of, Linza Jr.'s estate. (See § 8400 ["A person has no power to administer the estate until the person is appointed personal representative and the appointment becomes effective, which occurs when "the person appointed is issued letters."].) And neither document is in the record.

8

decedent must file a declaration stating his or her right to the interest in the property].) To allow DeJohnette to omit Linza Jr. and his estate from the final distribution after reaching a deal with only one of his children would be inconsistent with the statutory requirements of section 11802.

In addition to these procedural concerns, the terms of the proposed settlement were substantively problematic. The proposed settlement provided that DeJohnette would pay Linza III $30,000 from the Estate (and release DeJohnette's claims against Linza III) and that Linza Jr. would disclaim his entire interest in the Estate. There was good reason, however, for the probate court to believe Linza III was not the only person who was entitled to receive the proceeds of a distribution to Linza Jr. from the estate. The record does not identify the beneficiaries of Linza Jr.'s estate, or even reflect Linza III was one of them. But the court knew there was at least one potential beneficiary in addition to Linza III: Linza Jr.'s other child, Lisa. The practical effect of the proposed settlement agreement was that the Estate would have given Linza III cash and other consideration, while all of Linza Jr.'s other potential beneficiaries (not just Linza III) would have given up their right to receive Linza Jr.'s legitimate share of distributions from Toulonne's estate. Such a settlement would not have been fair to the other potential beneficiaries (or to Linza Jr., who may not have wanted his estate to pass entirely to Linza III). (See *In re Estate of Freeman* (1965) 238 Cal.App.2d 486, 489-490 [probate court may deny a petition for approval of a settlement "to the extent it finds the consideration grossly unreasonable"].)

DeJohnette argues the probate court should have approved the settlement despite these red flags because he made efforts to

9

contact Lisa and Linza III refused to provide her contact information. If anything, Linza III's unwillingness to provide Lisa's contact information created a suspicion Lisa would not have agreed to the proposed settlement had she known about it and understood its terms. After all, under the proposed settlement, she would be giving up her potential interest (through Linza Jr.) in the Estate and receive nothing in return. And that DeJohnette's (rather limited) efforts to locate Lisa were temporarily thwarted was additional justification for denying the petition. As discussed, the Probate Code specifies the persons to whom an administrator must distribute a deceased beneficiary's share of the estate. It does not permit the administrator to reach a settlement with one, and only one, of the deceased beneficiary's potential heirs simply because the administrator cannot locate others. Where the "whereabouts of a distributee" are unknown, the probate court must include that person in the final distribution order and "provide for alternate distributees" who may obtain the distributee's share after five years. (See § 11603, subd. (c).)

2. *DeJohnette Did Not Give Lisa Adequate Notice*

"If no personal representative has been appointed for the postdeceased beneficiary" (here, Linza Jr.), "notice must be sent to his or her beneficiaries or other persons entitled to succeed to his or her interest in the decedent's estate." (Cal. Rules of Court, rule 7.51(e).) DeJohnette does not contend he gave Lisa notice of the hearing on the proposed settlement and final distribution. He simply asserts (in addition to stating Linza III refused to provide Lisa's contact information) that "all attempts to contact Lisa have led to nothing."

10

The Probate Code allows the administrator to provide notice of a hearing by personal delivery, mail, or electronic delivery. (§ 1215; Cal. Rules of Court, rule 7.51(a)(1); see *Estate of Carter* (2003) 111 Cal.App.4th 1139, 1145 [due process requires that known and reasonably ascertainable heirs receive "*personal* notice of estate proceedings, that is, by mail or personal service"].) Where, as here, the address of a person entitled to receive notice is unknown, the administrator "must file a declaration describing efforts made to locate" the person. (Cal. Rules of Court, rule 7.52(a).) "The declaration must state . . . the last known address of the person, the approximate date when the person was last known to reside there, the efforts made to locate the person, and any facts that explain why the person's address cannot be obtained. The declaration must include a description of the attempts to learn of the person's business and residence addresses by: [¶] (1) Inquiry of the relatives, friends, acquaintances, and employers of the person entitled to notice and of the person who is the subject of the proceeding; [¶] (2) Review of appropriate city telephone directories and directory assistance; and [¶] (3) Search of the real and personal property indexes in the recorder's and assessor's offices for the county where the person was last known or believed to reside." (*Ibid.*)

The only evidence of DeJohnette's attempts to contact Lisa were statements in his verified petition that "[c]alls were placed to each of [Lisa's] known numbers" and on-line investigation "was done to obtain her address." These vague assertions were insufficient. At the very least, DeJohnette should have specified the dates Lisa lived at her last known address, whom (besides Linza III) he contacted, and what records he searched to obtain her address. (See Ross & Cohen, Cal. Practice Guide: Probate

11

(The Rutter Group 2008) ¶ 3:217 (Sept. 2022 update) ["Clearly, 'reasonable efforts' require more than simply questioning the immediate survivors about the whereabouts of their relatives."].)

3. *DeJohnette Did Not Show the Pasadena House Was Toulonne's Separate Property*

Finally, DeJohnette contends the court erred in denying the petition on the basis the Pasadena house appeared to be community property. According to DeJohnette, the probate court "has no authority to deny a petition based upon its own objection." DeJohnette's understanding of the law is incorrect.

"Even apart from the statutory authority, the probate court is a court of general jurisdiction [citation] with broad equitable powers." (*Estate of Kraus, supra*, 184 Cal.App.4th at p. 114; see *Estate of Stanley* (1949) 34 Cal.2d 311, 319; *Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1311). The probate court has the "power to hear and determine, in the mode provided by law, all questions of law and fact, the determination of which is ancillary to a proper judgment in such case." (*Stanley*, at p. 319; see *Bennett*, at p. 1311.) In particular, "the probate court has jurisdiction to determine whether property is part of the decedent's estate." (*Kraus*, at p. 114; see *Estate of Baglioni* (1966) 65 Cal.2d 192, 197 ["a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim"]; *Estate of Dabney* (1951) 37 Cal.2d 672, 680-681 [probate court may "in the exercise of judicial discretion . . . delay the distribution of the estate until the right to the assets be judicially determined"].)

Indeed, before approving a distribution, the probate court must be satisfied the evidence shows the assets included in the

12

proposed distribution belong to the estate. "The power of the probate court extends only to the property of the decedent. An attempt to take and distribute the property" that does not belong to the decedent "is a violation of due process [citation]." (*In re Estate of Lee* (1981) 124 Cal.App.3d 687, 692.) Where an agreement for an estate distribution "embraces both property that is a part of the estate and property which is not a part of the estate, especially community property, the probate court has jurisdiction to decide the validity of the entire agreement" (*Estate of Stanley*, *supra*, 34 Cal.2d at p. 319), which includes determining the character of the property (see *id.* at pp. 319-320.)

DeJohnette has not cited any evidence in the record demonstrating—one way or the other—whether the Pasadena house was community property or Toulonne's separate property.[4] Therefore, he has failed to meet his burden to show the probate court abused its discretion in declining to approve the settlement. (See *Canyon Crest Conservancy v. County of Los Angeles* (2020) 46 Cal.App.5th 398, 409 ["Under the abuse of discretion standard, we presume the trial court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise."]; *Estate of Walker* (1963) 221 Cal.App.2d 792, 796 ["Abuse of discretion is never presumed; it must be affirmatively established by the party complaining of the court's order, and all reasonable inferences from the evidence which will uphold the order will be indulged."].) DeJohnette does cite his attorney's argument, at the hearing on the petition to approve the settlement, that Linza Jr. "quitclaimed" the property.

---

[4] DeJohnette does not, for example, cite any evidence of who is on the title to the property, when the property was purchased, or when Toulonne and Linza Jr. married.

13

Statements and arguments by counsel, however, are not evidence.[5] (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 139; see *York v. City of Los Angeles* (2019) 33 Cal.App.5th 1178, 1191; see also § 1000, subd. (a) [except where the Probate Code provides otherwise, "[a]ll issues of fact joined in probate proceedings shall be tried in conformity with the rules of practice in civil actions"].)

## DISPOSITION

The order is affirmed.  DeJohnette is to bear his costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

---

[5]     There is no evidence in the record of a quitclaim deed.  And the petition Linza Jr. filed while he was alive for a homestead exemption suggests he did not believe the house was Toulonne's separate property.

14